Misty **FERGUSON**, Plaintiff–Appellee,

v.

**COUNTRYWIDE CREDIT INDUS-TRIES, INC.**, Countrywide Home Loans, Inc., Defendants–Appellants,

**and**

**Leo DeLeon; Does 1–10, inclusive,** Defendants.

No. 01–55985.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 1, 2002.

Filed July 23, 2002.

Karen A. Rooney, Steptoe & Johnson, Los Angeles, CA, attorney for the defendants-appellants.

Janet Koehn, Ventura, California, attorney for the plaintiff-appellee.

Cliff M. Palefsky, McGuinn, Hillsman & Palefsky, San Francisco, CA, attorney for amicus curiae, National Employment Lawyers Assn.

* The Honorable James M. Fitzgerald, Senior District Judge for the District of Alaska, sitting by designation.

Before PREGERSON and TROTT, Circuit Judges, and FITZGERALD,* District Judge.

## OPINION

PREGERSON, Circuit Judge.

Misty Ferguson ("Ferguson") filed a complaint against Countrywide Credit Industries, Inc. ("Countrywide") and her supervisor, Leo DeLeon ("DeLeon"), alleging causes of action under federal and state law for sexual harassment, retaliation, and hostile work environment. Countrywide filed a petition for an order compelling arbitration of Ferguson's claims. The district court denied Countrywide's petition on the grounds that Countrywide's arbitration agreement is unenforceable based on the doctrine of unconscionability and that Ferguson cannot be compelled to arbitrate her Title VII employment discrimination claims. Countrywide appeals this decision. We have jurisdiction under 9 U.S.C. § 16(a)(1)(B). We review de novo a district court's denial of a motion to compel arbitration, *United Food & Commercial Workers Union, Local 770 v. Geldin Meat Co.*, 13 F.3d 1365, 1368 (9th Cir.1994), and affirm on the ground that the arbitration agreement is unconscionable.

## I.

### FACTUAL and PROCEDURAL HISTORY

Ferguson filed a complaint against Countrywide and DeLeon, alleging causes of action for sexual harassment, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964

and 1991, 42 U.S.C. §§ 2000e–2(a), 2000e 3 & 1981a(c), and the California Fair Employment and Housing Act, Cal. Gov't Code §§ 12900 *et seq.* ("FEHA").

Countrywide filed a petition to compel arbitration of Ferguson's claims. When Ferguson was hired she was required to sign Countrywide's Conditions of Employment, which states in relevant part: "I understand that in order to work at Countrywide I must execute an arbitration agreement." Countrywide's arbitration agreement ("the arbitration agreement") contains the following relevant clauses:

Paragraph 1. *Agreement to Arbitrate; Designated Claims:*

"Except as otherwise provided in this Agreement, the Company and Employee hereby consent to the resolution by arbitration of all claims or controversies for which a federal or state court ... would be authorized to grant relief. ..."

The arbitration agreement then outlines which claims are covered by the agreement [1] and which claims are not covered.[2]

Paragraph 3. *Waiver of Right to Jury:* "By entering into this Agreement, the Company and Employee each knowingly and voluntarily waive any and all rights they have under law to a trial before a jury."

Paragraph 8. *Fees and Costs:* "The party requesting the arbitration shall pay to NAF [National Arbitration Forum] its filing fee up to a maximum of $125.00 when the Claim is filed. The Company shall pay for the remainder of the NAF filing fee. The Company shall pay for the first hearing day. All other arbitration costs shall be shared equally by the Company and the Employee.... However, the arbitrator, may in his or her discretion, permit the prevailing party to recover fees and costs only to the extent permitted by applicable law."

Paragraph 9. *Discovery:* "[E]ach side shall be limited to three depositions and an aggregate of 30 discovery requests of any kind.... A deposition of a corporate representative shall be limited to no more than four designated subjects.... Each side may depose the other side's experts, ... and these depositions will not be charged to the parties' aggregate limit on discovery requests or the three deposition limit."

Paragraph 11. *Exclusive Remedy:* "For Claims covered by this Agreement, arbitration is the parties' exclusive remedy."

In her answer to Countrywide's petition to compel arbitration, Ferguson denied that

---

1. **Agreement to Arbitrate; Designated Claims:** "The Claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant, express or implied; tort claims; claims for discrimination or harassment on bases which include but are not limited to race, sex, sexual orientation, religion, national origin, age, marital status, disability or medical condition; claims for benefits ... and claims for violation of any federal, state or other governmental constitution, statute, ordinance, regulation, or public policy."

2. **Claims Not Covered by This Agreement:** "This Agreement does not apply to or cover claims for workers' compensation or unemployment compensation benefits; claims resulting from the default of any obligation of the Company or the Employee under a mortgage loan which was granted and/or serviced by the Company; claims for injunctive and/or other equitable relief for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information; or claims based upon an employee pension or benefit plan that either (1) contains an arbitration or other non-judicial resolution procedure, in which case the provisions of such plan shall apply, or (2) is underwritten by a commercial insurer which decides claims."

she signed the arbitration agreement and requested a jury trial on that issue, pursuant to section 4 of the Federal Arbitration Act ("FAA").[3] Countrywide filed reply documents in support of the petition, and submitted evidence that Ferguson entered the agreement.

The district court, Judge A. Howard Matz presiding, denied Countrywide's petition to compel arbitration. Although the court found that Ferguson raised a genuine dispute regarding the making of the arbitration agreement, it ruled that, assuming the agreement does exist: (1) the arbitration agreement is unenforceable because it is unconscionable under *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 99 Cal. Rptr.2d 745, 6 P.3d 669 (Cal.2000); and (2) under the Ninth Circuit's holding in *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1190 (9th Cir.1998), Ferguson cannot be compelled to arbitrate her Title VII claims.

Countrywide appeals the denial of its petition to compel arbitration.[4]

## II.

## UNCONSCIONABILITY

A. The district court correctly concluded that Countrywide's arbitration agreement was unenforceable because it is unconscionable under California law.

■ The FAA compels judicial enforcement of a wide range of written arbitration agreements. Section 2 of the FAA provides, in relevant part, that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In determining the validity of an agreement to arbitrate, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). "Thus, generally applicable defenses, such as ... unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

■ California courts may invalidate an arbitration clause under the doctrine of unconscionability. This doctrine, codified by the California Legislature in California Civil Code § 1670.5(a), provides:

> if the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

This statute, however, does not define unconscionability. Instead, we look to the California Supreme Court's decision in *Armendariz*, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, which provides the definitive pronouncement of California law on

---

3. Section 4 of the FAA, 9 U.S.C. § 4, provides in relevant part: "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."

4. The denial of a petition to compel arbitration is immediately appealable under 9 U.S.C.

§ 16(a)(1)(B). Section 16 of the Federal Arbitration Act, 9 U.S.C. § 16, states:

> (a) An appeal may be taken from—
> (1) an order ...
> (B) denying a petition under section 4 of this title to order arbitration to proceed....

unconscionability to be applied to mandatory arbitration agreements, such as the one at issue in this case. In order to render a contract unenforceable under the doctrine of unconscionability, there must be both a procedural and substantive element of unconscionability. *See Armendariz*, 99 Cal.Rptr.2d 745, 6 P.3d at 690. These two elements, however, need not both be present in the same degree. *See A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 186 Cal.Rptr. 114, 121 (Ct. App.1982). Thus, for example, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable." *Armendariz*, 99 Cal.Rptr.2d 745, 6 P.3d at 690.

1. Procedural Unconscionability

■ Procedural unconscionability "concerns the manner in which the contract was negotiated and the circumstances of the parties at that time." *Kinney v. United Healthcare Servs., Inc.*, 70 Cal.App.4th 1322, 83 Cal.Rptr.2d 348, 352–53 (Ct.App.1999). A determination of whether a contract is procedurally unconscionable focuses on two factors: oppression and surprise. " 'Oppression' arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. 'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 60 Cal.Rptr.2d 138, 145 (Ct.App.1997).

In *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 2329, 153 L.Ed.2d 160 (2002), we held that the arbitration agreement at issue satisfied the elements of procedural unconscionability under California law.[5] We found the agreement to be procedurally unconscionable because:

Circuit City, which possesses considerably more bargaining power than nearly all of its employees or applicants, drafted the contract and uses it as its standard arbitration agreement for all of its new employees. The agreement is a prerequisite to employment, and job applicants are not permitted to modify the agreement's terms—they must take the contract or leave it.

*Circuit City*, 279 F.3d at 893 (citing *Armendariz*, 99 Cal.Rptr.2d 745, 6 P.3d at 690). *See also Stirlen*, 60 Cal.Rptr.2d at 146 (finding procedural unconscionability where an arbitration clause is part of a

**5.** Last year, the Supreme Court issued its landmark ruling in *Circuit City v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). In *Circuit City*, Adams, a Circuit City employee, filed an employment discrimination claim against Circuit City in California state court, asserting claims under FEHA and common law tort theories. Circuit City filed suit in federal district court seeking to enjoin the state-court action and compel arbitration under the FAA, 9 U.S.C. § 1. The district court granted the order. We reversed, holding that *all* contracts of employment are exempt from the FAA. *Circuit City v. Adams*, 194 F.3d 1070, 1071 (9th Cir.1999). The Supreme Court granted certiorari to determine whether Section 1 of the FAA, 9 U.S.C. § 1—which excludes from its coverage "contracts of employment of seaman, railroad employees, or any other class of workers engaged in foreign or interstate commerce"—applied to all employees or only to transportation employees. The Supreme Court held that the FAA provision exempting certain employment contracts applied only to transportation workers, leaving all non-transportation employees subject to the FAA. *Circuit City*, 532 U.S. at 109, 121 S.Ct. 1302. The Supreme Court then remanded the case to the Ninth Circuit for further proceedings consistent with its opinion. *Circuit City*, 532 U.S. at 124, 121 S.Ct. 1302.

contract of adhesion in which the employee is presented with an employment contract on a "take it or leave it" basis). In the present case, as in *Circuit City*, the arbitration agreement was imposed as a condition of employment and was non-negotiable.

■■■ Countrywide contends that there was no element of "surprise" or "oppression" in its arbitration agreement because Ferguson had "ample time to consider alternatives to Countrywide's terms of employment" and the contract was "written in plain language." A California appellate court recently rejected these arguments, holding that whether the plaintiff had an opportunity to decline the defendant's contract and instead to enter into a contract with another party that does not include the offending terms is not the relevant test for procedural unconscionability. *See Szetela v. Discover Bank*, 97 Cal.App.4th 1094, 118 Cal.Rptr.2d 862, 867 (Ct.App. 2002). Instead, California courts have consistently held that where a party in a position of unequal bargaining power is presented with an offending clause without the opportunity for meaningful negotiation, oppression and, therefore, procedural unconscionability, are present. In *Stirlen*, the California Court of Appeal held that where the terms of the employment contract were cast in a "take it or leave" light and presented as standard non-negotiable provisions, the procedural element of unconscionability is satisfied. *Stirlen*, 60 Cal. Rptr.2d at 146. *See also Armendariz*, 99 Cal.Rptr.2d 745, 6 P.3d at 690 (finding procedurally unconscionable a contract which requires, as a condition of employment, that employees waive their right to bring future claims in court). Because Ferguson was in a position of unequal bargaining power and was presented with

offending contract terms without an opportunity to negotiate, the district court in the instant case correctly found Countrywide's arbitration agreement procedurally unconscionable.

### 2. Substantive Unconscionability

■■ Substantive unconscionability "focuses on the terms of the agreement and whether those terms are so one-sided as to *shock the conscience.*" *Kinney*, 83 Cal. Rptr.2d at 353 (internal quotations and citations omitted).

Just before oral argument was heard in this case, the California Court of Appeal held in another case that Countrywide's arbitration agreement was unconscionable. *See Mercuro v. Superior Court*, 96 Cal. App.4th 167, 116 Cal.Rptr.2d 671 (Ct.App. 2002), *review denied sub nom. Mercuro v. Countrywide Sec.*, S105424, 2002 Cal. LEXIS 3328 at *1 (Cal. May 15, 2002).

During oral argument, counsel for Countrywide conceded that the provisions of the arbitration agreement in the present case are the same as the provisions of the arbitration agreement at issue in *Mercuro*.

#### a. One-sided coverage of arbitration agreement

■■ Countrywide's arbitration agreement specifically covers claims for breach of express or implied contracts or covenants, tort claims, claims of discrimination or harassment based on race, sex, age, or disability, and claims for violation of any federal, state, or other governmental constitution, statute, ordinance, regulation, or public policy. On the other hand, the arbitration agreement specifically excludes claims for workers' compensation or unemployment compensation benefits,[6] in-

---

6. In *Mercuro*, the court concluded that the inclusion of workers' compensation or unem-

ployment compensation benefits among those claims that are exempt from the arbitration

junctive and/or other equitable relief for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information. We adopt the California appellate court's holding in *Mercuro*, that Countrywide's arbitration agreement was unfairly one-sided and, therefore, substantively unconscionable because the agreement "compels arbitration of the claims employees are most likely to bring against Countrywide ... [but] exempts from arbitration the claims Countrywide is most likely to bring against its employees." *Id.* at 677. Further, we agree with the reasons advanced by the California appellate court in *Mercuro* and conclude that Countrywide's justifications for its one-sided arbitration agreement are not persuasive.

### b. Arbitration Fees

In *Armendariz*, the California Supreme Court held that:

> when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court. This rule will ensure that employees bringing [discrimination] claims will not be deterred

by costs greater than the usual costs incurred during litigation, costs that are essentially imposed on an employee by the employer.

*Armendariz*, 99 Cal.Rptr.2d 745, 6 P.3d at 687.

 Countrywide's arbitration agreement has a provision that requires the employee to "pay to NAF [National Arbitration Forum] its filing fee up to a maximum of $125.00 when the Claim is filed. The Company shall pay for the first hearing day. All other arbitration costs shall be shared equally by the Company and the Employee." Countrywide argues that this provision is not so one-sided as to "shock the conscience" and, therefore, is enforceable. However, *Armendariz* holds that a fee provision is unenforceable when the employee bears *any* expense beyond the usual costs associated with bringing an action in court. *Id.* As indicated in Ferguson's opposition to the petition to compel arbitration and in her brief, NAF imposes multiple fees which would bring the cost of arbitration for Ferguson into the thousands of dollars.[7] Moreover, on remand in *Circuit City*, we held that a fee allocation scheme which requires the employee to split the arbitrator's fees with the employer would alone render an arbitration agreement substantively unconscionable. *Circuit City*, 279 F.3d at 894.[8]

---

agreement did not "turn what is essentially a unilateral arbitration agreement into a bilateral one." *Mercuro*, 116 Cal.Rptr.2d at 677. The California court reasoned that both these areas are governed by their own adjudicatory systems rendering them an improper subject matter for arbitration. In its opening brief, Countrywide acknowledges that workers' compensation or unemployment compensation benefits are different and concludes: "The agreement could not encompass these claims as a matter of law."

7. Amicus Curiae National Employment Lawyers Association ("NELA") discusses at length

the significant forum costs associated with arbitration. Parties to arbitration are often charged two or three thousand dollars per day in arbitration "forum fees," since arbitrators typically charge $300–400 per hour. We are concerned by the significant deterrent effect that such fees will have on employees who are required to arbitrate their civil rights claims.

8. Our conclusion that Countrywide's fee provision is unconscionable is not affected by the fact that, under Countrywide's arbitration agreement, "the arbitrator, may in his or her discretion permit the prevailing party to re-

In the alternative, Countrywide concedes that the fee provision is unenforceable under *Armendariz,* but maintains that it modified its fee provision after Ferguson purportedly signed the arbitration agreement but before she filed her claims.[9] The modification, which provides that "the Company shall pay the remainder of the NAF filing fee, and shall pay all other arbitration-specific costs," was announced to Countrywide employees via an e-mail sent on October 17, 2001, by Countrywide's Vice President of Human Resources.

The district court found as a matter of fact that Countrywide did not effectively modify the arbitration agreement to include the revised fee scheme. The arbitration agreement itself provides that "this agreement can be modified or revoked only by a writing signed by the Employee and an executive officer of the Company that references this Agreement and specifically states an intent to modify or revoke this Agreement." Countrywide provides no evidence that it has complied with these requirements, and thus the district court properly found that the October 17 modification was ineffective. Indeed, Countrywide raised the same argument in *Mercuro*, and the California Court of Appeal similarly concluded that "the purported modification is invalid" because Countrywide did not follow its company modification procedure. *Mercuro*, 116 Cal.Rptr.2d at 681.

Because the only valid fee provision is one in which an employee is not required to bear any expense beyond what would be required to bring the action in court, we affirm the district court's conclusion that "the original fee provision ... appears clearly to violate the *Armendariz* standard."

c. One-sided discovery provision

Ferguson also argues that the discovery provision in the arbitration agreement is one-sided and, therefore, unconscionable. The discovery provision states that "[a ] deposition of a corporate representative shall be limited to no more than four designated subjects," but does not impose a similar limitation on depositions of employees. Ferguson also notes that the arbitration agreement sets mutual limitations (e.g., no more than three depositions) and mutual advantages (e.g., unlimited expert witnesses) which favor Countrywide because it is in a superior position to gather information regarding its business practices and employees' conduct, and has greater access to funds to pay for expensive expert witnesses.

Ferguson urges this court to affirm the district court's ruling that the discovery provision is unconscionable on the ground that the limitations and mutual advantages on discovery are unfairly one-sided and have no commercial justification other than "maximizing employer advantage," which is an improper basis for such differences under *Armendariz*, 99 Cal.Rptr.2d 745, 6 P.3d at 692. Countrywide argues to the contrary that the arbitration agreement provides for ample discovery by employees.

In *Armendariz*, the California Supreme Court held that employees are "at least

---

cover fees and costs." As is clear on its face, this provision is *discretionary* and, therefore, there is no guarantee that the prevailing party will, in fact, recover fees. Moreover, the significant up-front costs associated with bringing a claim in an arbitral forum may prevent individuals with meritorious claims from even pursuing these claims in the first place.

9. "Countrywide concedes the provision in the arbitration contract requiring the employee to pay an equal share of the costs unique to arbitration, including the arbitrator's fee, is unlawful under *Armendariz.*" *Mercuro*, 116 Cal.Rptr.2d at 681.

entitled to discovery sufficient to adequately arbitrate their statutory claims, including access to essential documents and witnesses." *Armendariz*, 99 Cal.Rptr.2d 745, 6 P.3d at 684. Adequate discovery, however, does not mean unfettered discovery. As *Armendariz* recognized, an arbitration agreement might specify "something less than the full panoply of discovery provided in [California] Code of Civil Procedure." *Id.*

In *Mercuro*, the California Court of Appeals applied the parameters set forth in *Armendariz* to Countrywide's discovery provisions. It concluded that "without evidence showing how these discovery provisions are applied in practice, we are not prepared to say they would not necessarily prevent Mercuro from vindicating his statutory rights." *Mercuro*, 116 Cal.Rptr.2d at 682. *Mercuro* relied heavily on the ability of the arbitrator to extend the discovery limits for "good cause." *Id.* at 682–83. In fact, *Mercuro* ultimately left it up to the arbitrator to balance the need for simplicity in arbitration with the discovery necessary for a party to vindicate her claims. *Id.* at 683. Following the Court in *Mercuro*, we too find that Countrywide's discovery provisions may afford Ferguson adequate discovery to vindicate her claims.

Nevertheless, we recognize an insidious pattern in Countrywide's arbitration agreement. Not only do these discovery provisions appear to favor Countrywide at the expense of its employees, but the entire agreement seems drawn to provide Countrywide with undue advantages should an employment-related dispute arise. Aside from merely availing itself of the cost-saving benefits of arbitration, Countrywide has sought to advantage itself substantively by tilting the playing field.

While many of its arbitration provisions appear "equally applicable to both parties,

[these provisions may] work to curtail the employee's ability to substantiate any claim against [the employer]." *Kinney*, 83 Cal.Rptr.2d at 355. We follow *Mercuro* in holding that the discovery provisions alone are not unconscionable, but in the context of an arbitration agreement which unduly favors Countrywide at every turn, we find that their inclusion reaffirms our belief that the arbitration agreement as a whole is substantively unconscionable.

B. The offending provisions of Countrywide's arbitration agreement cannot be severed or limited.

██ Countrywide argues that, if we conclude that certain provisions of its arbitration agreement are unconscionable, we should sever those offending provisions and enforce the remainder of the contract. Under California Civil Code § 1670.5(a):

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Under this section, however, a court may, in its discretion, "refuse to enforce the contract as a whole if it is permeated by the unconscionability." Legislative Committee Comment on § 1670.5.

In *Armendariz*, the California Supreme Court declined to sever the unconscionable provisions of an arbitration agreement for two reasons, both of which are applicable to Countrywide's arbitration agreement. First, the court found that there was more than one unlawful provision and that "such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation,

but as an inferior forum that works to the employer's advantage." *Armendariz,* 99 Cal.Rptr.2d 745, 6 P.3d at 696–97. Second, the agreement's lack of mutuality so permeated the contract that "the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms." *Id.* at 697.

In the instant case, the lack of mutuality regarding the type of claims that must be arbitrated, the fee provision, and the discovery provision, so permeate Countrywide's arbitration agreement that we are unable to sever its offending provisions. In *Mercuro,* the California Court of Appeal reached the same conclusion and declined to sever the objectionable provisions of Countrywide's arbitration agreement, noting "[i]f we did so there would be virtually nothing of substance left to the contract. Instead, we would need to rewrite those provisions according to what we believed was fair and equitable. This, of course, we cannot do." *Mercuro,* 116 Cal.Rptr.2d at 684. For these same reasons, we find that Countrywide's arbitration agreement is so permeated with unconscionable clauses that we cannot remove the unconscionable taint from the agreement.

## CONCLUSION

The district court's denial of Countrywide's petition to compel arbitration on the ground that Countrywide's arbitration agreement is unenforceable under the doctrine of unconscionability is AFFIRMED.[10]

---

**10.** We decline to rule on the district court's alternative ground that Countrywide's arbitration agreement is invalid under *Duffield,* 144 F.3d 1182, because we conclude that the agreement is unconscionable under state law.

*See American Mining Congress v. U.S. Environmental Protection Agency,* 965 F.2d 759, 772 (9th Cir.1992) (declining to rule on an alternative ground after reaching a conclusion that resolves the issue on appeal).