United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 5, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 03-10484
_____

LOY CARTER, Etc.; ET AL.,

                                            Plaintiffs,

LOY CARTER, on behalf of themselves and
all others similarly situated; GEOFF
BURKHART, on behalf of themselves and
all others similarly situated; HEATHER
DAWN YOUNG, on behalf of themselves
and all others similarly situated;
DEBORAH ROBINSON, on behalf of themselves
and all others similarly situated,

                                 Plaintiffs - Appellants,

                    versus

COUNTRYWIDE CREDIT INDUSTRIES, INC.;
COUNTRYWIDE HOME LOANS, INC.; FULL
SPECTRUM LENDING, INC.,

                                 Defendants - Appellees.
_____

Appeal from the United States District Court
for the Northern District of Texas
_____

Before GARWOOD, JOLLY, and CLEMENT, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

     Appellees Countrywide Credit Industries, Inc., Countrywide

Home Loans, Inc., and Full Spectrum Lending, Inc. ("Countrywide")

are in the business of selling and servicing consumer mortgage

loans.  Appellants Loy Carter, Geoff Burkhart, Heather Young, and

Deborah Robinson ("Carter Appellants") are current and former

employees of Countrywide who brought suit against Countrywide on behalf of themselves and others similarly situated in an attempt to recover overtime compensation allegedly due under the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201. Following the filing of this suit, Countrywide moved to compel the plaintiffs to submit their claims to arbitration under arbitration agreements ("the Arbitration Agreements"), which all Countrywide employees sign as a condition of their employment with the company.

In response, the Carter Appellants admitted that they signed the Arbitration Agreements. However, they asserted that the Agreements were invalid and thus unenforceable for four primary reasons: (1) FLSA claims are not subject to arbitration; (2) the Agreements are unconscionable; (3) the Agreements infringe on substantive rights otherwise granted by the FLSA; and (4) the fee splitting arrangement contained in the Agreements imposes impermissibly prohibitive arbitration costs on them.

The district court rejected the first three arguments entirely, holding that the Agreements were not unconscionable nor would their enforcement clash with any substantive provisions of the FLSA. The district court did hold, however, that the Agreements' fee-splitting provision imposed prohibitive costs on the Carter Appellants; in this respect, the district court simply severed this provision from the Agreements under the severability clause, and ordered Countrywide to pay all costs associated with

arbitration.  The district court then granted Countrywide's motion to compel arbitration.

The Carter Appellants appealed.  On appeal, they reassert their earlier objections to the validity and enforceability of the Arbitration Agreements here.  They also contend that although the district court correctly concluded the fee-splitting provision was unenforceable, it nevertheless erred by merely severing that provision as opposed to invalidating the Agreements entirely.  For the reasons below, we disagree and AFFIRM the judgment compelling arbitration.

I

The Federal Arbitration Act ("FAA") provides that pre-dispute arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The Supreme Court has noted that the purpose of the FAA is "'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place [them] upon the same footing as other contracts.'" Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 89 (2000) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)).  Accordingly, there is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity. Gilmer, 500 U.S. at 26.  We review the denial of a motion to compel arbitration de novo. Hadnot v. Bay, Ltd., 344 F.3d 474, 476 (5th Cir. 2003).

The Carter Appellants first argue that the Arbitration Agreements are unenforceable because FLSA claims are not subject to arbitration. They contend that the FLSA grants them access to a judicial forum and that this grant cannot be waived by an agreement to arbitration. For authority, they cite the Supreme Court case of Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728 (1981). We cannot agree.

We have already noted that individuals seeking to avoid the enforcement of an arbitration agreement face a high bar. This bar is high even where, as here, the claims subject to arbitration are statutory in nature. Under Gilmer, a court is required to enforce a party's commitment to arbitrate his federal statutory claims unless he can show that Congress intended to preclude arbitration or other nonjudicial resolution of those claims. 500 U.S. at 26. This showing is made by reference to "the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes." Id. (internal quotations removed). In weighing such an argument, a court should keep centrally in mind "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Id. (internal quotations removed). Perhaps indicative of the difficulty of making such a showing, the Supreme Court has seldom found congressional intent to preclude the arbitration of any particular statutory claim.

The Carter Appellants assert here that the text and legislative history of the FLSA explicitly preclude arbitration. As the district court noted, however, there is nothing in the FLSA's text or legislative history supporting this assertion. Indeed, like the district court, we find nothing that would even implicitly have that effect. This fact has been recognized by the other two circuit courts that have addressed this issue. See Kuehner v. Dickinson & Co., 84 F.3d 316, 319-20 (9th Cir. 1996) (finding no evidence that Congress intended to preclude arbitration of FLSA claims in the text or legislative history of the statute); Adkins v. Labor Ready, Inc., 303 F.3d 496, 506 (4th Cir. 2002) (holding that FLSA claims are arbitrable).

Undaunted, the Carter Appellants cite Barrentine and its Fifth Circuit progeny, Bernard v. IBP, Inc. of Nebraska, 154 F.3d 259 (5th Cir. 1998), for the proposition that FLSA claims are not subject to arbitration. However, neither of these cases support the Carter Appellants. Significantly, Barrentine and Bernard involved arbitration agreements embedded in collective-bargaining agreements, not individually executed pre-dispute arbitration agreements like the ones at issue here. This difference is not insignificant; the Supreme Court explicitly distinguished between these two types of arbitration agreements in Gilmer, ultimately concluding that the former may not be subject to arbitration while the latter are. In addition, as the Supreme Court noted in Gilmer, Barrentine took place during a period of judicial skepticism

5

concerning the efficacy of arbitral forums.  By the time of <u>Gilmer</u>, however, the "mistrust of the arbitral process" expressed by <u>Barrentine</u>-era cases had been "undermined by [the Supreme Court's] recent arbitration decisions."  <u>Gilmer</u>, 500 U.S. at 34 n.5.  Similar conclusions concerning the inapplicability of <u>Barrentine</u> to this case were reached by our sister circuits in <u>Kuehner</u>, 84 F.3d at 320, and <u>Adkins</u>, 303 F.3d at 506.  We thus find unpersuasive the Carter Appellants' contention that FLSA claims are not subject to arbitration.

                              III

     The Carter Appellants also argue that the Arbitration Agreements here are invalid because they deprive them of substantive rights guaranteed by the FLSA.  Specifically, they contend that the Agreements interfere with their right under the FLSA to proceed collectively, collect attorney fees, select their forum, and engage in appropriate discovery.  We find no such interference that will preclude the enforcement of these agreements.

     First, we reject the Carter Appellants' claim that their inability to proceed collectively deprives them of substantive rights available under the FLSA.  The Supreme Court rejected similar arguments concerning the ADEA in <u>Gilmer</u>, despite the fact that the ADEA, like the FLSA, explicitly provides for class action suits.  500 U.S. at 32.  What is more, the provision for class actions in the ADEA <u>is</u> the FLSA class action provision, which the

                               6

ADEA expressly adopts.  29 U.S.C. § 626(b).  Accordingly, <u>Gilmer</u>'s conclusion in this respect applies with equal force to FLSA claims.

Similarly, we reject the Carter Appellants' assertion that the Arbitration Agreements' limits on discovery deprive them of substantive FLSA rights.  Once again, the Supreme Court considered and rejected a similar argument in <u>Gilmer</u>.  <u>Id</u>. at 31.  There, the Court noted that the mere fact that discovery in arbitration proceedings "might not be as extensive as in federal courts" does not render those agreements invalid; by agreeing to arbitrate, a party simply "trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."  <u>Id</u>.  Thus, a party seeking to have an arbitration agreement invalidated on this basis must show that the discovery provisions in question "will prove insufficient to allow [FSLA] claimants . . . a fair opportunity to present their claims."  <u>Id</u>. We agree with the district court's conclusion that there is no evidence here that the limits placed on discovery will have such an effect on the Carter Appellants' individual cases.

We also conclude that the Arbitration Agreements' failure to explicitly mandate that the arbitrator grant attorneys' fees to prevailing parties is not a basis for invalidating the Agreements. Although Paragraph 8 of the Agreements states that "[e]ach party shall pay for each party's own costs and attorneys' fees," Paragraph 2 states that the arbitration "shall be adjudicated in accordance with the state or federal law which would be applied by

7

a United States District Court sitting at the place of hearing." Therefore, if the Carter Appellants prevail on their FLSA claims at arbitration, and thereby become entitled to attorneys' fees under the statute, the arbitrator would be required by the Agreements to grant the fees. Indeed, Paragraph 8 concedes this fact as it goes on to state that "the arbitrator may, in his or her discretion, permit the prevailing party to recover fees and costs only to the extent permitted by applicable law."[1] Accordingly, the Agreements do not deny the Carter Appellants their ability to recover attorneys' fees if they prevail.

Finally, we cannot agree with the Carter Appellants' assertion that the presence of a forum selection clause in the Arbitration Agreements prevents them from vindicating their substantive FLSA rights. The clause at issue states as follows, in relevant part:

> [A]rbitration hearings covered by this Agreement are to be held within the Federal Judicial District in which Employee was last employed with the Company.

This court has previously stated that a "forum selection provision in a written contract is prima facie valid and

---

[1]The Agreements also provide a mechanism for having the failure to grant such fees reviewed. Paragraph 11 gives the parties the "right to appeal to the appropriate court any errors of law." Given the fact that "judicial review of arbitral adjudication of federal statutory employment rights . . . must be sufficient to ensure that arbitrators comply with the requirements of the statute at issue," Williams v. Cigna Financial Advisors Inc., 197 F.3d 752, 761 (5th Cir. 1999) (internal quotations omitted), it seems clear that if an arbitrator failed to award fees he or she should have under the statute, the Carter Appellants would have an effective remedy in federal court.

enforceable unless the opposing party shows that enforcement would be unreasonable." Kevlin Services, Inc. v. Lexington State Bank, 46 F.3d 13, 15 (5th Cir. 1995). Though Kevlin Services involved a forum selection provision in a contract that did not contain an arbitration agreement, we think the same burden on the objecting party of demonstrating unreasonableness should apply here.

The forum selection provision is not, on its face, unreasonable. Had the Carter Appellants been able to provide evidence that application of the forum selection provision placed an unreasonable burden on any of them individually, the provision might not have been enforceable. However, and significantly, they have not done so.[2] Three of the four Carter Appellants reside in the same area where they were employed; and while the fourth has moved to another judicial district, arbitrating in the forum required by the Agreements would be closer to where she now lives than to the judicial district where the Carter Appellants initially filed this case. Accordingly, we do not think the forum selection clause here works to prevent any of the Carter Appellants from vindicating any of their statutory rights.

IV

---

[2] In their brief, the Carter Appellants do provide the names of several mystery plaintiffs who would find the enforcement of the forum clauses unreasonable because they have moved away from the arbitral forum. However, leaving aside the fact that nothing about them or their current residences appears in the record, these hypothetical plaintiffs are not the parties before us today. Accordingly, whether the operation of the forum selection clause would be unreasonable as to them is irrelevant.

The Carter Appellants next argue that the "Fee and Costs" provision in the Arbitration Agreements imposes excessive and prohibitive costs on them and, as such, renders the Agreements unenforceable under Green Tree, 531 U.S. at 90. In Green Tree, the Supreme Court noted that prohibitive arbitration costs may hamper an employee's ability to bring her statutory claims in arbitration, effectively preventing the employee from vindicating her statutory rights. Id. The district court agreed with the Carter Appellants' contention that the Agreements would impose prohibitive costs on them; however, the court refused to invalidate the Agreements on that basis. Instead, the district court simply severed the offending provision under the the Agreements' severability clause and ordered Countrywide to pay all arbitration costs. The Carter Appellants argue that this was error -- that instead of severing the provision, the district court should have invalidated the Agreements in their entirety.

We need not reach this argument, however, because the Carter Appellants' prohibitive costs argument has been mooted by Countrywide's representation to the district court that it would pay all arbitration costs. In October 2000, nearly a year prior to the beginning of this litigation, Countrywide sent a Memorandum to all of its employees revising the "Fee and Costs" provision of the Arbitration Agreements. So revised, the new provision only required employees to pay a $125 filing fee, with Countrywide paying all other arbitration costs. In keeping with their

10

obligations under this revision, Countrywide has already formally acknowledged that it would pay all the arbitration costs (excluding the $125 filing fee) of the Carter Appellants. Indeed, Countrywide has done just that for other plaintiffs who were originally part of this action but were later removed and elected to proceed to arbitration. Thus, it is impossible here for the Carter Appellants to carry their burden of "provid[ing] some individualized evidence that [they] likely will face prohibitive costs in the arbitration at issue and that [they are] financially incapable of meeting those costs." Livingston v. Associates Fin., Inc., 339 F.3d 553, 557 (7th Cir. 2003). See also Bradford v. Rockwell Semiconductors Sys., Inc., 238 F.3d 549, 557 (4th Cir. 2001).[3] Accordingly, the issue of arbitration costs is moot in this case.[4]

V

---

[3]The district court rejected this argument on the grounds that Countrywide's unilateral revisions to the contract were invalid because it did not follow the procedures outlined in the Agreements for amending the Agreements. Although this observation may be accurate as a matter of contract law, what is at issue here is whether these plaintiffs will be required to pay prohibitive arbitration fees and costs if they are forced to proceed to arbitration. See Livingston, 339 F.3d at 557 n.3. Countrywide's formal position in this case completely forecloses this possibility.

[4]Several of our sister circuits have reached similar conclusions. See, e.g., Livingston, 339 F.3d at 557 (holding that the fact that the defendants agreed to pay all costs associated with arbitration "forecloses the possibility that the [plaintiffs] could endure any prohibitive costs in the arbitration process"); Large v. Conseco Fin. Serv. Corp., 292 F.3d 49, 56-57 (1st Cir. 2002) (finding that the defendant's offer to pay the costs of arbitration "mooted the issue of arbitration costs").

11

The Carter Appellants also contend that the Arbitration Agreements should be invalidated on the grounds that they are unconscionable.  They concede that there is not one particular aspect of the Agreements that renders them unconscionable, but assert that the combined weight of all their allegedly onerous elements renders them so.  Their list of onerous elements includes those provisions that they argue infringe on their substantive FLSA rights -- lack of ability to proceed collectively, limited discovery, and the forum selection clause -- as well as the Agreements' fee-splitting arrangement and what they claim is Countrywide's abuse of its superior bargaining position.

In determining the contractual validity of an arbitration agreement, courts apply ordinary state-law principles that govern the formation of contracts.  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  Accordingly, we look to Texas state law to determine whether the arbitration agreements here are unconscionable.  Under Texas law, unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself.  In re Halliburton Co., 80 S.W.3d 566, 571 (Tex. 2002).  The burden of proving unconscionability rests on the party seeking to invalidate the arbitration agreement.  Id. at 572.  We find that the Carter Appellants simply cannot carry this burden here.

12

The Carter Appellants argue that the Agreements are procedurally unconscionable under Texas law because Countrywide used its superior bargaining position to coerce potential employees; that is, employees feared that they would not get the job unless they signed. This argument, however, has no support in Texas law. Indeed, the Texas Supreme Court specifically rejected such an argument in <u>Halliburton</u>. There, the court held that "an employer may make precisely such a 'take it or leave it' offer to its at-will employees." <u>Id</u>. The court reasoned that "[b]ecause an employer has a general right under Texas law to discharge an at-will employee, it cannot be unconscionable, without more, merely to premise continued employment on acceptance of new or additional employment terms." <u>Id</u>.

The Carter Appellants also argue that the Agreements' terms are substantively unconscionable because their terms are so one-sided and unfair. We have already rejected the essence of this argument. We earlier noted that the Arbitration Agreements' discovery, party joinder and forum provisions are not unreasonable. We have also concluded that the fee-splitting arrangement is no longer an issue in this case as Countrywide has agreed to pay all such fees itself. Accordingly, we agree with the district court's conclusion that the Arbitration Agreements here are not unconscionable.[5]

---

[5]In support of their contention that the Arbitration Agreements are unconscionable, the Carter Appellants rely heavily

13

Conclusion

We find no basis that the Arbitration Agreements here are invalid. We therefore AFFIRM the district court's judgment compelling arbitration.

AFFIRMED.

---

upon <u>Ferguson v. Countrywide Credit Industries, Inc.</u>, 298 F.3d 778 (9th Cir. 2002), a Ninth Circuit case affirming a district court's invalidation of an apparently identical arbitration agreement on unconscionability grounds.

This reliance on <u>Ferguson</u> is misguided, however, as the <u>Ferguson</u> court explicitly relied on California state law in determining that the arbitration agreement was unconscionable whereas here, both parties acknowledge that Texas law should apply. The Carter Appellants argue that this makes no salient difference because California law and Texas law regarding unconscionability are essentially the same. As the district court noted, however, this is incorrect. In reality, California law and Texas law differ significantly, with the former being more hostile to the enforcement of arbitration agreements than the latter. This difference can be quickly observed by noting their respective threshold views of arbitration agreements. In Texas, there is nothing per se unconscionable about arbitration agreements; indeed, parties claiming unconscionability bear the burden of demonstrating it. <u>See</u>, <u>e.g.</u>, <u>In re Oakwood Mobile Homes, Inc.</u>, 987 S.W.2d 571, 574 (Tex. 1999). Conversely, in California, a contract to arbitrate between an employer and an employee raises a rebuttable presumption of substantive unconscionability. <u>See</u>, <u>e.g.</u>, <u>Ingle v. Circuit City Stores, Inc.</u>, 328 F.3d 1165, 1179 (9th Cir. 2003) (applying California law). Given this dramatic difference between the two states' laws, <u>Ferguson</u> is hardly persuasive in applying Texas law.

14