

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00462-CV

IN RE FRANK KENT MOTOR                                    RELATOR
COMPANY D/B/A FRANK KENT
CADILLAC

----------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

----------

ORIGINAL PROCEEDING

----------

## OPINION

----------

### I. INTRODUCTION

Relator Frank Kent Motor Company d/b/a Frank Kent Cadillac seeks mandamus relief from the trial court's November 30, 2010 order denying its motion to strike Real Party in Interest Tony Garcia's jury demand. We will conditionally grant Frank Kent's petition for writ of mandamus.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Garcia sued Frank Kent for age discrimination and demanded a jury trial in his original petition. Frank Kent thereafter filed a motion to strike Garcia's jury demand, arguing that Garcia waived his right to a jury trial. Frank Kent attached to its motion a document entitled "Frank Kent Motor Company Employee Handbook Acknowledgment & Mutual Waiver of Jury Trial," which is signed by Garcia and dated May 20, 2008. The document states in part:

> **FKMC AND EACH EMPLOYEE THAT SIGNS THIS ACKNOWLEDGMENT, RECEIVES A COPY OF THIS HANDBOOK, HAS KNOWLEDGE OF THIS POLICY, AND CONTINUES TO WORK FOR FKMC THEREAFTER, HEREBY WAIVES THEIR RIGHT TO TRIAL BY JURY AND AGREE TO HAVE ANY DISPUTES ARISING BETWEEN THEM RESOLVED BY A JUDGE OF A COMPETENT COURT SITTING WITHOUT A JURY.**

It is undisputed that Garcia and Frank Kent contracted to waive a jury.[1]

Garcia responded that Frank Kent's motion should be denied because the jury waiver "was not signed under circumstances which were 'knowing, voluntary and intelligent.'" Garcia reached this conclusion by considering the facts

---

[1]The agreement expressly bound both parties; Garcia's signature (and facts contained in his affidavit) evidence his notification of the agreement, and Garcia continued working for Frank Kent from May 20, 2008 to January 15, 2009 (the date Frank Kent fired Garcia) with knowledge of the agreement. *See In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162–63 (Tex. 2006) (orig. proceeding) (reaffirming (1) that "[a]n employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it" and (2) that "[a]n at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law").

contained in an affidavit that he attached to his response in light of several factors set out in this court's opinion in *Mikey's Houses LLC v. Bank of Am., N.A.*, 232 S.W.3d 145, 153 (Tex. App.—Fort Worth 2007, no pet.), *mand. granted*, *In re Bank of Am., N.A.*, 278 S.W.3d 342 (Tex. 2009) (orig. proceeding). Garcia's affidavit set out the following facts:

- When the jury waiver was first presented to Garcia, he told a manager that he was not going to sign it.

- At some point thereafter (we do not know how long), a supervisor asked Garcia about his failure to sign the jury waiver, and Garcia—for the second time—said that he was not going to sign the waiver.

- The supervisor told Garcia that he "might" lose his job if he did not sign the jury waiver.

- Garcia asked the supervisor if he "had any choice, and she said that [he] did not."

- Garcia then signed the jury waiver "on the spot without any negotiation" "[b]ecause of what the supervisor told [him] that day."

- Garcia did not fully understand the legal significance of the document, but he knew enough that he did not like the language of the document and did not want to sign it.

- Garcia believed that he "likely" would have lost his job had he asked for time to hire a lawyer to analyze and negotiate the document.

- Garcia did not have a lawyer to evaluate the jury waiver.

- Frank Kent never told Garcia that it was willing to make changes to the jury waiver, nor does Garcia believe that Frank Kent was willing to make changes to the jury waiver.

Frank Kent replied that Garcia's affidavit failed to demonstrate that he did not sign the jury waiver knowingly, voluntarily, and intelligently, and it objected to

3

portions of Garcia's affidavit.[2] The trial court denied Frank Kent's motion to strike Garcia's jury demand. Frank Kent seeks mandamus relief directing the trial court judge to enforce the jury waiver.

### III. STANDARD OF REVIEW

Mandamus relief is proper only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). A trial court has no discretion in determining what the law is or in applying the law to the facts. *Prudential*, 148 S.W.3d at 135. We may not substitute our decision for that of the trial court unless the relator establishes that the trial court could reasonably have reached only one decision and that the trial court's decision is arbitrary and unreasonable. *Walker*, 827 S.W.2d at 839–40. This burden is a heavy one. *In re CSX, Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding). Mandamus review is proper to address whether a presuit jury waiver is enforceable. *Prudential*, 148 S.W.3d at 138.

---

[2]The trial court sustained only objection number 5, in which Frank Kent objected "to the first and second sentence[s] of paragraph number 7 of Garcia's affidavit where [he] testifies that the Jury Waiver was prepared by the Defendant's attorney as speculation, conclusory and irrelevant."

## IV. MANDAMUS RELIEF IS APPROPRIATE

Frank Kent argues that the trial court abused its discretion by denying its motion to strike Garcia's jury demand. It contends that we should presume that Garcia signed the jury waiver knowingly, intelligently, and voluntarily because Garcia did not allege or prove any fraud or imposition regarding the jury waiver; that Garcia's affidavit does not overcome the presumption that he signed the jury waiver knowingly, intelligently, and voluntarily; and, therefore, that the jury waiver is enforceable. Garcia responds that he rebutted the presumption that he signed the jury waiver voluntarily because the uncontroverted facts contained in his affidavit show that he was coerced to sign the jury waiver and the factors used to evaluate voluntariness support his position.

As the dissent in *Mikey's Houses* recognized, although waiver is ordinarily a question of fact, when the facts and circumstances are admitted or clearly established, the question becomes one of law. 232 S.W.3d at 166 (Livingston, J., dissenting). The evidence in *Mikey's Houses* was undisputed; therefore, the enforceability of the waiver in that case was determined as a matter of law. Here, the facts set out in Garcia's affidavit were uncontroverted.[3] Consequently, we determine whether the conspicuous jury waiver is enforceable as a matter of law.

---

[3]The lone objection sustained by the trial court does not effectively controvert the relevant parts of Garcia's affidavit.

5

Contractual jury waivers are enforceable, but they must be found to be a voluntary, knowing, and intelligent act that was done with sufficient awareness of the relevant circumstances and likely consequences. *Prudential*, 148 S.W.3d at 133–34; *In re Credit Suisse First Boston Mortg. Capital, L.L.C.*, 257 S.W.3d 486, 490 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding [mand. denied]). If there is an allegation of fraud or imposition, then the party seeking to enforce a jury waiver has the burden to show that the waiver was executed knowingly and voluntarily. *Bank of Am.*, 278 S.W.3d at 345 (overruling *Mikey's Houses* burden analysis). If, however, there is no allegation of fraud or imposition, then a conspicuous waiver of trial by jury is presumed to be knowing and voluntary and the party opposing the waiver has the burden to rebut that presumption. *Id.*; *see In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006) (orig. proceeding).

Garcia has not alleged any fraud or imposition in regard to the jury waiver. Therefore, the jury waiver is presumed to be knowing and voluntary if it is conspicuous. The jury waiver is written in capital letters, is in bold, and is underlined. The supreme court has held that such a jury waiver is conspicuous. *See Gen. Elec.*, 203 S.W.3d at 316; *see also* Tex. Bus. & Com. Code Ann. § 1.201(b)(10) (Vernon 2009) (defining "conspicuous" to mean "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it."). Accordingly, the jury waiver is presumed to be

knowing and voluntary, and Garcia had the burden to rebut this presumption. *See Bank of Am.*, 278 S.W.3d at 345; *Gen. Elec.*, 203 S.W.3d at 316.

Considerations that are commonly relevant to a determination of whether a contractual jury waiver was entered into knowingly and voluntarily include (1) the bargaining power of the parties, (2) whether the parties were represented by counsel and whether the counsel had an opportunity to examine the agreement, (3) the experience of the parties in negotiating the type of contract signed, (4) whether the party challenging the jury waiver had an opportunity to negotiate and examine the contract, (5) the conspicuousness of the waiver, and (6) the actual negotiations over the clause. *See Prudential*, 148 S.W.3d at 134 (considering several factors); *Mikey's Houses*, 232 S.W.3d at 166 (Livingston, J., dissenting) (identifying factors).

Instead of simply applying the facts set out in Garcia's affidavit to these considerations, as Garcia does in his response, we are compelled to first address the status of the parties that are involved in this dispute, as it is relevant to our analysis. *Prudential* involved litigants who were parties to a commercial lease. 148 S.W.3d at 127. *General Electric* involved litigants who were parties to a promissory note and a guaranty. 203 S.W.3d at 314. *Bank of America* involved litigants who were parties to a real estate contract. 278 S.W.3d at 343. Unlike in

7

those cases, here, it is undisputed that Garcia was an *at-will employee* of Frank Kent when he executed the jury waiver.[4]

It is well established that specific rules accompany the at-will employment relationship. *See, e.g., Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 608 (Tex. 2002) (explaining that an at-will employee may be fired for any reason or no reason at all, except that the at-will employee may not be fired because he refused to act illegally); *see also Ed Rachal Found. v. D'Unger*, 207 S.W.3d 330, 332 (Tex. 2006). In explaining how modifications may be made to the at-will employment relationship, the supreme court stated that, generally, at-will employees must accept the new terms or quit:

> In employment at will situations, either party may impose modifications to the employment terms as a condition of continued employment. The party asserting the modification still must prove that the other party agreed to modify the employment terms. *Generally, when the employer notifies an employee of changes in employment terms, the employee must accept the new terms or quit. If the employee continues working with knowledge of the changes, he has accepted the changes as a matter of law.* Thus, to prove a modification of an at will employment contract, the party asserting the modification must prove two things: (1) notice of the change; and, (2) acceptance of the change.

---

[4]There is language in the document that contains the jury waiver explaining that in the absence of a written agreement between an employee and Frank Kent, all employees of Frank Kent are employees at will, and there is no evidence or argument by either party that Garcia had a written agreement with Frank Kent. *See Ronnie Loper Chevrolet-Geo, Inc. v. Hagey*, 999 S.W.2d 81, 83 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (reasoning that the presumption of at-will employment may only be rebutted by an agreement that directly limits, in a "meaningful and special way," the employer's right to terminate at will).

8

*Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986) (emphasis added and citations omitted).

In *In re Halliburton Co.*, the supreme court considered whether an arbitration agreement between an employer and an at-will employee was supported by sufficient consideration and, among other things, whether the provision was unconscionable. 80 S.W.3d 566, 566, 571–72 (Tex. 2002) (orig. proceeding). In addressing the at-will employee's argument that the arbitration provision was procedurally unconscionable, the supreme court stated,

> Myers first asserts that the provision is procedurally unconscionable as there was gross disparity in bargaining power between the parties because Myers had no opportunity to negotiate; Halliburton told him to accept the Program or leave. *But in Hathaway, we recognized that an employer may make precisely such a "take it or leave it" offer to its at-will employees. Because an employer has a general right under Texas law to discharge an at-will employee, it cannot be unconscionable, without more, merely to premise continued employment on acceptance of new or additional employment terms.*

*Id.* at 572 (emphasis added and citations omitted); *see also Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004) (citing *Halliburton* and rejecting argument that agreement was unconscionable because appellee "used its superior bargaining position to coerce potential employees").

Although this case concerns a contractual jury waiver and not an arbitration agreement, the supreme court has confirmed that "our jurisprudence 'should be the same for all similar dispute resolution agreements.'" *See Bank of Am.*, 278 S.W.3d at 343–44 (quoting *Prudential*, 148 S.W.3d at 135); *see also*

9

*Mikey's Houses*, 232 S.W.3d at 161 (Livingston, J., dissenting) ("But in light of Texas's strong public policy of enforcing freedom of contract, it does not make sense to treat valid contractual jury waivers . . . differently from arbitration agreements . . . ."). Garcia directs us to no authority demonstrating that the standards underlying the employer/employee at-will relationship are irrelevant in the context of addressing the enforceability of a contractual jury waiver or are an exception thereto.[5] Therefore, *Halliburton's* at-will employee analysis is relevant to whether Garcia successfully rebutted the presumption that he knowingly and voluntarily executed the waiver.

With this background, we now evaluate Garcia's argument that he rebutted the presumption of a knowing and voluntary jury waiver. Garcia opined in his affidavit that Frank Kent gave him no choice but to sign the jury waiver, stating that he might have been fired if he did not sign it. Garcia thus construed Frank Kent's actions as presenting the jury waiver to him on a "take it or leave it" basis. In light of this uncontroverted factual foundation, Garcia argues that he

---

[5]Procedurally, waiving a jury trial may be less harsh than agreeing to arbitration. In *Prudential*, the supreme court explained that,

> [I]f parties are willing to agree to a non-jury trial, we think it preferable to enforce that agreement rather than leave them with arbitration as their only enforceable option. By agreeing to arbitration, parties waive not only their right to trial by jury but their right to appeal, whereas by agreeing to waive only the former right, they take advantage of the reduced expense and delay of a bench trial, avoid the expense of arbitration, and retain their right to appeal.

148 S.W.3d at 132.

successfully rebutted the presumption of a knowing and voluntary jury waiver. But Garcia's execution of what he believed to be a "take it or leave it" jury waiver did not render the waiver unenforceable for lack of voluntariness simply because Frank Kent presented it to him on a "take it or leave it" basis. This is because, under *Halliburton*, Frank Kent legally could have made such a "take it or leave it" offer to Garcia, an at-will employee. *See Halliburton*, 80 S.W.3d at 572. Concluding that Garcia overcame the presumption of a knowing and voluntary jury waiver *only* because the jury waiver was presented to him on a "take it or leave it" basis would (1) effectively create an exception to the at-will employment doctrine that we are not prepared—and, indeed, have no authority—to make and (2) erroneously distinguish *Halliburton*'s relevant at-will employment analysis, contrary to *Bank of America*'s guidance about analyzing dispute resolution agreements.

Further, each consideration set out above weighs in favor of the presumption that Garcia executed the jury waiver knowingly and voluntarily. Regarding relative bargaining power, Garcia apparently had to accept Frank Kent's modification to his at-will employment or face termination. On these facts, this is not an example of employer overreaching or coercion; it is simply the nature of at-will employment. Regarding representation by counsel, if Garcia had an attorney, the attorney could have asserted argument after argument against the jury waiver, but Frank Kent could have rejected each and every one and responded, "Take it or leave it." As for the experience of the parties and the

11

negotiations surrounding the jury waiver's execution, Garcia's at-will employment relationship with Frank Kent permeates the analysis of these considerations too, and each consideration weighs in favor of Frank Kent.

Garcia agrees that Frank Kent had the authority to fire him, but he argues that Frank Kent did not have the authority to coerce him to sign the jury waiver. *See Bank of Am.*, 278 S.W.3d at 346; *Prudential*, 148 S.W.3d at 134. According to Garcia, "[t]he jury waiver contract, like all other contracts in this State, was voidable upon proof that [Garcia] was forced to execute it involuntarily." While we certainly agree that a jury waiver must be executed voluntarily, Garcia's arguments erroneously conflate coercion with an employer's well-settled power to make a "take it or leave it" offer to its at-will employee. *See Carter*, 362 F.3d at 301 (rejecting argument that employer coerced employees to sign arbitration agreement). Further, the facts contained in Garcia's affidavit do not support his argument that he overcame the presumption of a knowing and voluntary jury waiver by a showing of coercion. *See In re D.E.H.*, 301 S.W.3d 825, 828 (Tex. App.—Fort Worth 2009, pet denied) (reasoning that coercion occurs if someone is compelled to perform an act by force or threat); *see also* Tex. Penal Code Ann. § 1.07(a)(9) (Vernon Supp. 2010) (defining coercion to mean a threat, however communicated, to commit an offense; to inflict bodily injury in the future on the person threatened or another; to accuse a person of any offense; to expose a person to hatred, contempt, or ridicule; to harm the credit or business repute of any person; or to take or withhold action as a public servant, or to cause a public

12

servant to take or withhold action); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 837 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (listing elements of economic duress or business coercion, which include a threat of an act that the actor had no legal right to do). Frank Kent had a legal right to discharge Garcia.

We hold that under the specific facts of this case, Garcia failed to rebut the presumption that he executed the conspicuous jury waiver knowingly, intelligently, and voluntarily. Accordingly, the trial court clearly abused its discretion by denying Frank Kent's motion to strike Garcia's jury demand. We sustain Frank Kent's sole issue.

## V. Conclusion

Having sustained Frank Kent's sole issue, we conditionally grant a writ of mandamus directing the trial court (1) to vacate the November 30, 2010 order and (2) to grant Frank Kent's motion to strike Garcia's jury demand. A writ will issue only if the trial court fails to do so.


BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DELIVERED: February 24, 2011


13