David **BLOXOM** and **Karen Bloxom, Plaintiffs,**

v.

**LANDMARK PUBLISHING CORPORATION, Collegiate Publishing Corporation, and Diploma–Art Galleries, Ltd., Defendants.**

No. 1:01–CV–386.

United States District Court,
E.D. Texas,
Beaumont Division.

Feb. 5, 2002.

Scot G. Doyen of Orgain, Bell & Tucker, LLP, Beaumont, TX, for Plaintiffs.

Michael Lamar Jones and Elizabeth R. Caldeleugh, Henry & Jones, Dallas, TX, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION

SCHELL, District Judge.

This matter is before the court on "Defendants' Motion to Dismiss and Compel Arbitration" (Dkt.# 3), filed June 25, 2001. Plaintiffs filed a Response (Dkt.# 6) on September 10, 2001,[1] and Defendants filed a Reply (Dkt.# 10) on December 10, 2001. Upon consideration of the parties' written submissions and the applicable law, the court is of the opinion that "Defendants' Motion to Dismiss and Compel Arbitration" should be GRANTED.

## I. BACKGROUND

Defendants Landmark Publishing Corporation ("Landmark"), Collegiate Publishing Corporation ("Collegiate"), and Diploma–Art Galleries Ltd. ("DAG") are in the business of marketing, selling, and distributing picture frames that are used to display college diplomas. Collegiate and DAG are wholly owned subsidiaries of Landmark. On May 24, 1999, David and Karen Bloxom ("Plaintiffs") and DAG entered into a Product Purchase Agreement whereby Plaintiffs contracted to purchase frames from DAG that Plaintiffs would then sell and distribute in and around Orange County, Texas. Plaintiffs claim that they entered into this agreement in response to an advertisement placed by DAG in the *Beaumont Enterprise*. Plaintiffs further assert that the advertisement was false and misleading, and that Defen-

dants misrepresented the quality of their goods, which caused Plaintiffs to lose thousands of dollars.

On May 24, 2001, Plaintiffs filed this case in the 260th Judicial District Court of Orange County, Texas. In their Original Petition, Plaintiffs alleged the following claims: (1) violations of the Texas Deceptive Trade Practices–Consumer Protection Act ("deceptive trade practices");[2] (2) common law fraud; and (3) breach of contract. Defendants removed the case to this court on June 18, 2001.

Defendants move the court to compel all of Plaintiffs' claims to arbitration and dismiss those claims pursuant to the arbitration clause in the Product Purchase Agreement. Under the heading labeled "Disputes and Disagreements," the Product Purchase Agreement contains the following language:

> The dispute, controversy or claim arising out of or in connection with this Agreement or any alleged breach thereof shall, upon request of either party, and after failure to reach a resolution through informal mediation, be then submitted to and conclusively settled by arbitration in the City of Atlanta in the State of Georgia pursuant to the Commercial Arbitration Rules then in effect of the American Arbitration Association. Any award rendered shall be final and conclusive upon the parties and judgment thereon may be entered in the highest court of the forum, state or federal, having jurisdiction. The expenses of the arbitration shall be borne equally by the parties to the arbitration, provided that each party shall pay for and bear

---

1. Plaintiffs' Response to the instant Motion also contains a Motion to Compel Mediation, which requests that the court order the case to mediation before ruling on Defendants' Motion. On September 16, 2001, the court signed an order referring the case to mediation.

2. The Texas Deceptive Trade Practices–Consumer Protection Act is codified at section 17.41, *et seq.*, of the Texas Business and Commerce Code.

the costs of its own experts, evidence and counsel's fees, except that in the discretion of the arbitrator, any award may include the cost of a party's counsel ... if the arbitrator expressly determines that the party against whom such award is entered has been unreasonable in its position.

Defs.' Mot. Ex 1. at 10.

Pursuant to specific language in the aforesaid provision of the Product Purchase Agreement, the court signed an order on September 16, 2001, referring the case to mediation. Mediation was held on November 14, 2001, and resulted in an impasse between the parties. Thus, consideration of Defendants' Motion is now ripe for consideration by the court.

In their Motion, Defendants argue that all of Plaintiffs' claims against Defendants arise out of the Product Purchase Agreement between Plaintiffs and DAG. Specifically, they contend that, although neither Collegiate nor Landmark are parties to the agreement, all claims against them must be submitted to arbitration because any such claims arise out of the agreement. Further, Defendants argue that Plaintiffs claims should be dismissed rather than stayed because all claims are subject to mandatory arbitration.

Plaintiffs, however, counter that the arbitration provision in the agreement is unenforceable against them for two reasons. First, Plaintiffs assert they were fraudulently induced to enter into the contract. Second, they believe the costs of arbitration as set forth in the agreement would be prohibitive.

## II. DISCUSSION

### A. *Standard*

The Federal Arbitration Act ("FAA") creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the act." *Moses H. Cone Memorial Hosp. v.* *Mercury Const.,* 460 U.S. 1, 25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Section 2 of the FAA states that a written arbitration agreement in any contract involving interstate commerce is valid, irrevocable, and enforceable except on grounds that would permit the revocation of a contract in law or equity. 9 U.S.C. § 2. "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements...." *Moses H. Cone Memorial Hosp.,* 460 U.S. at 25, 103 S.Ct. 927. Section 4 of the FAA allows a party to seek an order compelling arbitration if the other party has failed to arbitrate under a written arbitration agreement. 9 U.S.C. § 4.

■ Keeping in mind the liberal federal policy favoring arbitration agreements, courts conduct a two-step inquiry when deciding whether parties should be compelled to arbitrate a dispute. *OPE Int'l LP v. Chet Morrison Contractors Inc.,* 258 F.3d 443, 445 (5th Cir.2001) (citation omitted); *see also R.M. Perez & Assoc., Inc. v. Welch,* 960 F.2d 534, 538 (5th Cir.1992). First, the court must decide whether the parties agreed to arbitrate the dispute. *OPE Int'l LP,* 258 F.3d at 445; *see also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *OPE Int'l LP,* 258 F.3d at 445 (quoting *Webb v. Investacorp, Inc.,* 89 F.3d 252, 257–58 (5th Cir.1996)). Second, once the court determines that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable. *R.M. Perez & Assoc., Inc.,* 960 F.2d at 538 (citing *Mitsubishi Motors Corp.,* 473 U.S. at 628, 105 S.Ct. 3346). Thus, the first issue for consideration is

whether the parties agreed to arbitrate the instant dispute when Plaintiffs and DAG both signed an agreement containing an arbitration provision.

### B. *Whether The Parties Agreed To Arbitrate The Dispute*

#### 1. *Whether There Is A Valid Agreement To Arbitrate Between The Parties*

In order to determine whether the parties agreed to arbitrate the instant dispute, the court must first determine whether a valid agreement to arbitrate existed between the parties. On its face, an agreement to arbitrate existed between Plaintiffs and DAG when both parties signed the written Product Purchase Agreement, which contained an arbitration provision therein. However, a question arises as to whether the agreement to arbitrate applies to Landmark and Collegiate, both of whom are non-signatories to the agreement. Defendants assert that the arbitration agreement is applicable to Landmark even though it is not directly a signatory to the arbitration agreement because it is the parent company of DAG. "When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile*, 863 F.2d 315 (4th Cir.1988); *see also Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir.1976) ("If the parent corporation was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."). Here, the charges against Landmark and DAG are both based on the Product Purchase Agreement, and thus, are inherently insep-

arable. Therefore, the agreement to arbitrate applies to Landmark.

Further, Defendants argue that the agreement to arbitrate applies with equal force to both Landmark and Collegiate under a theory of equitable estoppel. In certain instances, a defendant who is a non-signatory to an arbitration agreement can nevertheless compel arbitration against a signatory plaintiff. *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir.2000). Specifically, equitable estoppel allows a non-signatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory. *Id.* at 527 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999)). Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one of the signatories to the contract. *Id.*

In the instant case, both Landmark and Collegiate can compel Plaintiffs' claims against them to arbitration under a theory of equitable estoppel by relying on either of the aforementioned circumstances. First, Plaintiffs must rely on the terms of the written agreement in asserting its claims against Landmark and Collegiate because Plaintiffs' claims arise out of the Product Purchase Agreement that it signed with DAG. Landmark is DAG's parent company; Collegiate is a fellow subsidiary. Neither independent facts nor separate claims were asserted against Landmark and Collegiate individually. Second, it is apparent that Plaintiffs raised allegations of substantially interdependent

and concerted misconduct by Landmark, Collegiate, and DAG. Therefore, the agreement to arbitrate applies to all Defendants in the instant suit.

■■■ Next, Plaintiffs attack the validity of the written arbitration agreement by contending that the agreement is unenforceable against them because they were "fraudulently induced to enter into this contract in its entirety and, specifically, concerning the arbitration provision." Pls.' Resp. to Defs.' Mot. at 4. To determine whether Plaintiffs can be compelled to arbitrate when they have alleged fraud, the central issue is "whether ... [P]laintiffs' claim of fraud relates to the making of the arbitration agreement itself or the contract as a whole." *R.M. Perez & Assoc., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir.1992) (citations omitted). If the fraud relates to the making of the arbitration agreement itself, the court should adjudicate the fraud claim. *Id.* If it relates to the formation of the entire contract, then the FAA requires that the fraud claim be decided by an arbitrator. *Id.* (citation omitted). In this case, Plaintiffs admit in their Response that "they were fraudulently induced to enter into the contract with the Defendants...." Pls.' Resp. to Debs.' Mot. at 3. They go on to state that "Plaintiffs understand this argument relates to the underlying contract and not the arbitration clause itself." *Id.* Later in their Response, Plaintiffs attempt to argue that they were fraudulently induced to enter into the arbitration provision as well as the contract in its entirety, but refuse to offer any supporting evidence in reference to the arbitration provision. As such, Plaintiffs' common law fraud claim relates to the contract as a whole. Thus, the court finds that a valid agreement to arbitrate existed between the parties.

**3.** To the extent Plaintiffs assert that their common law fraud claim is beyond the scope of the arbitration agreement, the court finds

### 2. Whether The Dispute In Question Falls Within The Scope Of The Arbitration Agreement

■■ The court must now determine whether the dispute in question falls within the scope of that arbitration agreement. Plaintiffs do not expressly challenge the scope of the arbitration agreement, but the court will undertake a brief analysis nonetheless.[3] In determining the scope of an arbitration agreement that falls under the FAA, the court must bear in mind the strong federal policy favoring arbitration. *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir.1996). It is important to note that the Fifth Circuit has made a distinction between "narrow" and "broad" arbitration clauses. *See Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir.1993). An arbitration clause is characterized as narrow when the language of the clause only requires the arbitration of disputes "arising out of" the agreement. *Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir.1998). A broad arbitration clause, on the other hand, includes language such as "any dispute that arises out of or relates to" the agreement, or disputes that are "in connection with" the agreement. *Id.* "Broad arbitration clauses ... are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id.* (citations omitted).

In the instant case, the arbitration clause states that "[t]he dispute, controversy or claim *arising out of or in connection with* this Agreement or any alleged breach thereof shall, upon request of either party

the claim arbitrable, and thus, within the scope of the agreement.

... be then submitted to and conclusively settled by arbitration...." Defs.' Mot. Ex. 1 at 10 (emphasis added). It is against this legal framework that the court now turns to analyze whether Plaintiffs' claims are covered by the arbitration clause.

■ The court is of the opinion that the clause should be characterized as a broad arbitration clause.[4] Bearing in mind the strong federal policy in favor of arbitration, the court concludes that the dispute has a significant relationship to the Product Purchase Agreement, and therefore, is arbitrable under its broad arbitration provision. The dispute flows from alleged fraud and deceptive practices regarding the Product Purchase Agreement, and the alleged breach of that agreement. As noted above, Plaintiffs' common law fraud claim is arbitrable because it relates to the making of the contract as a whole, and thus, has a significant relationship to the Product Purchase Agreement. Likewise, Plaintiffs' deceptive trade practices claims have a significant relationship to the Product Purchase Agreement as they are similar in essence to the common law fraud claim. The breach of contract claim also has a significant relationship to the Product Purchase Agreement because Plaintiffs are alleging breach of that very agreement. Therefore, all claims of the dispute in question fall within the scope of the arbitration agreement.

C. *Whether Any Federal Policy Renders Plaintiffs' Claims Nonarbitrable*

■ Since the court finds that the parties agreed to arbitrate all claims relating to the Product Purchase Agreement, the next question the court must consider is whether any federal statute or policy renders Plaintiffs' claims non-arbitrable. To this end, Plaintiffs assert that the arbitration provision in the Product Purchase Agreement is unenforceable against them because of the potentially prohibitive costs of arbitration. The arbitration provision states that, if mediation fails, any dispute between the parties will be "conclusively settled by arbitration in the City of Atlanta in the State of Georgia pursuant to the Commercial Arbitration Rules then in effect of the American Arbitration Association." Defs.' Mot. Ex. 1 at 10. Plaintiffs claim that this language constitutes an adhesion contract, which forces Plaintiffs to arbitrate in a forum that they cannot afford. They also argue that the contract's provision stating that the "expenses of the arbitration shall be borne equally by the parties to the arbitration" causes Plaintiffs to incur prohibitive costs. The court is not persuaded by these arguments.

"[W]here ... a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (holding that to prevent arbitration the record must show that a litigant will bear prohibitive costs).[5]

---

4. The sole difference between the instant arbitration clause and the model "broad" arbitration clause as set forth in *Pennzoil* is that the instant clause begins with "the dispute" rather than "any dispute." The previous paragraph in the Product Purchase Agreement, however, begins with the phrase "[i]t is the desire of the parties to privately resolve *any* disputes or disagreements between themselves." Defs.' Mot. at 9 (emphasis added). Taken in context, the word "the" obviously refers to the previously mentioned "any dispute." Accordingly, the instant arbitration clause operates no differently than if it began with the word "any." Furthermore, the arbitration clause contains the broadening term "in connection with;" therefore, all disputes between the parties having a significant relationship to the contract are arbitrable. *See Pennzoil*, 139 F.3d at 1067 (citations omitted).

5. In *Green Tree Fin. Corp.-Ala.*, the purchaser of a mobile home brought a class action against the lender who had financed the pur-

Here, Plaintiffs make no such showing. In fact, Plaintiffs simply claim that the agreement is an adhesion contract, only citing the express language of the arbitration provision in support of their position. The court, however, finds the language of the agreement reasonable and easy to understand. The plain language of the arbitration provision is clear as to where arbitration is to be held and who is to bear the costs. As such, Plaintiffs must have known when they signed the agreement that they would have to resolve any dispute "arising out of or in connection with" the agreement first through mediation, then mandatory arbitration in Atlanta, Georgia, and that they would share in the costs of arbitration.

Further, the fact that the costs of arbitration will be borne by both parties does not, in itself, constitute prohibitive cost to Plaintiffs. But, even if it did, the agreement contains the proviso that "any award may include the costs of a party's counsel if the arbitrator expressly determines that the party against whom such award is entered has been unreasonable in its position." Accordingly, the language concerning which party bears the costs of arbitration is not absolute. Thus, Plaintiffs have not met their burden of showing the likelihood of incurring prohibitive costs, and the parties must be compelled to arbitrate all claims of the dispute.

**D.** *Plaintiffs' Claims Are Dismissed With Prejudice*

Generally, if a suit is filed in federal court and the court finds that one or more of the issues is referable to arbitration, section 3 of the FAA requires a court to stay the action until the arbitration is complete. 9 U.S.C. § 3. Section 3, however, was not intended to limit dismissal of a case in the proper circumstances. *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161 (5th Cir.1992) (holding that the court did not err in dismissing with prejudice all claims where all were required to be submitted to arbitration). "The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Id.* (citations omitted). In the instant case, the language of the arbitration agreement mandates arbitration for any dispute "arising out of or in connection with" the agreement. Given the court's reasoning that the parties must be compelled to arbitrate all claims of the dispute, "retaining jurisdiction and staying the action will serve no purpose." *Id.* As a result, the court dismisses Plaintiffs' claims with prejudice.

## III. CONCLUSION

After reviewing the record, the court concludes that the parties must be compelled to arbitrate all claims of the dispute because there is a valid agreement to arbitrate between the parties, and no federal statute or policy renders the claims nonarbitrable. Moreover, Plaintiffs' claims are dismissed with prejudice. Therefore, "Defendants' Motion to Dismiss and Compel Arbitration" is GRANTED. It is so ORDERED.

chase. The lender sought to enforce the arbitration agreement in question, which was silent with respect to costs and fees. The purchaser argued that she would be required to bear prohibitive costs if she pursued the claims in an arbitral forum because she would thereby risk forgoing any claims she may have against the lender in court. The Supreme Court held that an arbitration agreement that does not mention arbitration costs is not per se unenforceable on a theory that it fails to affirmatively protect a party from potentially steep arbitration costs.