Opinion issued September 9, 2004 












In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01055-CV




IN RE JOHNNY LUNA, Relator




Original Proceeding on Petition for Writ of Mandamus




O P I N I O N
            This appeal concerns the substantive unconscionability of a binding arbitration
agreement between an employer and an at-will employee. Relator, Johnny Luna,
seeks mandamus relief from the trial court’s order granting the motion to compel
arbitration and to stay litigation of real parties in interest, Poly-America, L.P. d/b/a
Pol-Tex International and Poly-America GP, L.L.C. (collectively, Poly-America).


 
In one issue, Luna challenges several provisions contained in the arbitration
agreement. We determine whether the following provisions contained in the
arbitration agreement are substantively unconscionable: those (1) splitting arbitration
fees, with a cap on the employee’s cost at the highest month’s salary of the preceding
year, (2) limiting available remedies, (3) limiting discovery, (4) disallowing an
arbitrator’s application of a “good cause” standard to employment claims, and (5)
making the arbitration agreements binding as to any future claims that the employee
could bring, even for disputes arising after the employer-employee relationship had
terminated. We also determine whether all of the above-mentioned provisions, as a
whole, render the arbitration agreement substantively unconscionable. We
conditionally grant mandamus relief.
Background
          Poly-America hired Luna on October 21, 1998 to work as an operator in Poly-America’s plant in Mont Belvieu, Texas. When he was hired, Luna signed an
arbitration agreement. Luna continued to work for Poly-America, and, on July 18,
2002, Luna signed another document acknowledging that he had received the June
2002 employee handbook. The handbook contained another arbitration agreement
with substantively similar provisions. Luna was injured, and he filed a worker’s
compensation claim on December 7, 2002. On February 11, 2003, Poly-America
terminated Luna’s employment, and Luna subsequently sued Poly-America under the
Texas Labor Code, alleging wrongful discharge and retaliation. See Tex. Lab. Code
Ann. § 451.001 (Vernon Supp. 2004-2005). The trial court granted Poly-America’s
motion to compel arbitration and to stay litigation on September 19, 2003.
Burden of Proof and Standard of Review
          Mandamus is the proper means to review an order compelling arbitration under
the Federal Arbitration Act (FAA).


 In re Am. Homestar of Lancaster, Inc., 50
S.W.3d 480, 483 (Tex. 2001). Mandamus will lie when a trial court has clearly
abused its discretion. In re MHI P’ship, Ltd., 7 S.W.3d 918, 921 (Tex.
App.—Houston [1st Dist.] 1999, orig. proceeding).
          In determining the validity of arbitration agreements, courts should apply state-law principles governing the formation of contracts. First Options of Chicago, Inc.
v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995). Arbitration agreements
are strongly favored under Texas law. Prudential Sec., Inc. v. Marshall, 909 S.W.2d
896, 898 (Tex. 1995). Thus, the burden of proving unconscionability is on the party
opposing arbitration. In re FirstMerit Bank, N.A., 52 S.W.3d 749, 756 (Tex. 2001). 
An agreement to arbitrate is valid unless grounds, such as fraud or unconscionability,
exist at law or in equity for its revocation, as with any contract. Emerald Tex., Inc.
v. Peel, 920 S.W.2d 398, 402 (Tex. App.—Houston [1st Dist.] 1996, no writ). 
Unconscionability
          Luna asserts that the arbitration agreement is unenforceable because several of
its provisions are substantively unconscionable.
          The purpose of arbitration is to streamline the dispute-resolution process and
to minimize costs. Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 269 (Tex. 1992); see 
Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31, 111 S. Ct. 1647, 1655
(1991) (recognizing that parties who agree to arbitrate trade the opportunity for
review and procedures of the courtroom for the simplicity, informality, and
expedition of arbitration). As a result, the fact that arbitration does not afford parties
all the rights that litigation offers is built into the nature of the process, and the parties
presumably realize that they may be waiving some litigation rights in order to gain
the convenience and savings associated with arbitration.
          The FAA allows for arbitration in the employment context. See Circuit City
Stores, Inc. v. Adams, 532 U.S. 105, 113-15, 121 S. Ct. 1302, 1308-09 (2001); In re
Halliburton Co., 80 S.W.3d 566, 570 (Tex. 2002). The advantages of the arbitration
process do not disappear in the employment arena. See id. Thus, arbitration
agreements in the employment context are valid, irrevocable, and enforceable, save
upon such grounds as exist in law or equity for the revocation of any contract. See
id.
          In Halliburton, the Texas Supreme Court considered substantive
unconscionability to be one such potential ground. Id., 80 S.W.3d at 572 (“We
therefore clarify that courts may consider both procedural and substantive
unconscionability of an arbitration clause in evaluating the validity of an arbitration
provision.”). Under Texas law, “the basic test for unconscionability is whether, given
the parties’ general commercial background and the commercial needs of the
particular trade or case, the clause is so one-sided that it is unconscionable under the
circumstances existing when the parties made the contract.” FirstMerit Bank, 52
S.W.3d at 757. This principle is designed to prevent unfair surprise and oppression,
not to disturb allocation of risks due to superior bargaining power. Id. Substantive
unconscionability refers to the fairness of the arbitration provision itself, as opposed
to procedural unconscionability, which refers to the circumstances surrounding the
adoption of the arbitration provision. See Halliburton, 80 S.W.3d at 571. As stated
above, Luna had the burden to prove that the agreement’s provisions were
substantively unconscionable. See FirstMerit Bank, 52 S.W.3d at 756.          
A.      Costs of Arbitration
          Luna asserts that the arbitration agreement’s cost-allocation provisions are
substantively unconscionable because they require him to pay more than a nominal
fee for the arbitration. Specifically, the agreement in the employee handbook
provides:
All fees charged by the Mediator shall be divided equally between the
Parties. All fees associated with the Arbitration (including, but not
limited to, the Arbitrator’s fee, court reporter fees, and fees to secure a
place for the hearing, if any) shall be divided equally between the
Parties. However, the total fees incurred by Employee shall not exceed
the gross compensation earned by the Employee in Employee’s highest
earning month in the twelve months prior to the time the arbitrator
issues his award.

Luna estimated that his potential cost based on the foregoing provision could be as
much as $4,550.


 The affidavit of Peter Costea, an experienced employment lawyer,
established that the average cost for an arbitration in Harris County in cases similar
to Luna’s would be more than $20,000. Luna stated in his affidavit that two attorneys
refused to take his case on a contingency basis due to the arbitration agreement, and
he also stated that he would be unable to afford the arbitration fees. Luna’s evidence
as to cost and his inability to pay was uncontroverted. Based on this evidence, Luna
argues that the cost was so prohibitive that the cost provision should have been found
substantively unconscionable.
          Luna argues that the agreement’s cost provisions are substantively 
unconscionable because, in Halliburton, the supreme court found that a cost
provision that imposed only a $50 fee on the employee was substantively
conscionable, whereas the fees assessed against Luna here are 91 times that amount. 
See Halliburton, 80 S.W.3d at 572. Luna’s argument employs the logical fallacy
known as “denying the antecedent.”


 Applying that logical fallacy, Luna argues that
(1) under Halliburton, if a cost provision in an arbitration agreement requires an
employee to pay $50 (or less), it is conscionable; (2) Poly-America’s cost provision
required the employee to pay more than $50; (3) therefore, the provision was
unconscionable.
          We agree with Poly-America’s contention that the Texas Supreme Court did
not intend to require every arbitration agreement to provide the same protection as the
arbitration agreement in Halliburton. In Halliburton, the Texas Supreme Court
reversed the trial court’s order denying an employer’s motion to compel arbitration. 
See Halliburton, 80 S.W.3d at 573. The court held that the agreement provided
employees with adequate protection for several reasons, one of which was that the
employer agreed to pay all of the arbitration expenses except for a $50 filing fee. See
id. at 572. The court cited Cole v. Burns International Security Services


 as an
example of another court that had upheld an arbitration agreement with similar
provisions. See Halliburton, 80 S.W.3d at 572. However, we do not think that, by
finding the cost provisions in Halliburton to be conscionable, the Texas Supreme
Court meant, by implication, that provisions imposing greater costs on the employee
were necessarily unconscionable. Indeed, in Texas, an arbitrator’s decision requiring
an employee to pay more than $50 in arbitration fees has been upheld. See, e.g.,
Williams v. Cigna Fin. Advisors, Inc., 197 F.3d 752, 763 (5th Cir. 1999) (upholding
arbitration panel’s decision requiring employee to pay half of all forum fees).
          Luna argues that, based on the Halliburton court’s citation to Cole, we should
adopt the position set forth in Cole (and in some other federal court decisions) that
it is per se substantively unconscionable to impose anything more than a nominal fee
on a discharged employee for arbitration.


 However, this position is in conflict with
the holding of Pony Express Courier Corp. v. Morris. In Pony Express, the
arbitration agreement between the employer and the employee contained a fee-sharing
provision. See id, 921 S.W.2d 817, 822 (Tex. App.—San Antonio 1996, no pet.). 
That court asserted that equal cost- sharing is a standard feature of arbitration clauses. 
See id. The court stated that a fee-splitting provision contained in an arbitration
agreement is not, by itself, unconscionable. See id.
          However, the Pony Express court noted that it could not determine whether the
agreement as a whole was unconscionable because the parties did not provide
sufficient facts for the court to make that determination. See id. Here, the
uncontroverted testimony of Costea established that the arbitration will almost
certainly force Luna to pay the maximum capped amount to arbitrate his case. In
addition, Luna stated that he could not afford these arbitration fees, which amount to
more than one-half of his annual compensation.
          Poly-America asserts that, under Texas law, the cost provision is not
unconscionable. Poly-America bases its argument on Pony Express and In re
FirstMerit Bank. However, we have already distinguished Pony Express from the
present case because the Pony Express court did not have sufficient facts before it to
determine whether the arbitration agreement could be substantively unconscionable
as a whole. See id., 921 S.W.2d at 822. FirstMerit Bank is also distinguishable. The
real parties in interest in FirstMerit Bank were complaining, in part, that the
arbitration filing fee was excessive. See id., 52 S.W.3d at 756-57. The court held that
it did not need to determine whether the costs of arbitration were excessive because
the arbitration addendum made no reference to the actual costs and there was no
evidence that the fees in question would be charged. See id. In this case, Costea’s
unrebutted affidavit showed the average costs of an arbitration in Harris County.




          Poly-America also relies on two federal cases to support its argument that the
cost provisions are not unconscionable: Bloxom v. Landmark Publishing Corp., 184
F. Supp.2d 578 (E.D. Tex. 2002), and Williams v. Cigna Financial Advisors, Inc., 197
F.3d 752 (5th Cir. 1999). In Bloxom, the court held there was no evidence that the
costs would be prohibitive. See id., 184 F. Supp. 2d at 585 (holding that the
plaintiff’s mere assertion that the costs were prohibitive was not sufficient to show
prohibitive cost). Here, there is unrebutted evidence of the average costs of
arbitration in the region.
          In Williams, the Fifth Circuit Court of Appeals considered whether an
arbitrator’s order requiring that a discharged employee pay one-half of the arbitral
forum fees after the arbitration’s conclusion violated public policy. See id., 197 F.3d
at 763. The court held that the employee had to demonstrate that paying half of the
forum fees “prevented him from having a full opportunity to vindicate his claims
effectively or prevented the arbitration proceedings from affording him an adequate
substitute for a federal judicial forum.” Id. at 764. To meet that standard, the
employee needed to show that he was unable to pay one-half of the forum fees or that
it was prohibitively expensive for him to pay the fees, which he failed to show. See
id. at 764-65 (holding that, when appellant had already arbitrated his claims, paid part
of arbitration fees, and testified that his salary for the year was in excess of $100,000,
appellant failed to show prohibitive expense). However, the facts in Williams are
plainly distinguishable from the facts in this case. Luna’s evidence showed that he
would not be able to afford the arbitration fees and that he was having difficulty
obtaining an attorney due to the arbitration agreements.
          Although, under Texas law, the Pony Express decision indicates that the cost
provisions here would not be unconscionable by themselves, the evidence that Luna
provided as to arbitration costs and his inability to pay them shows that, unlike the
employees in Pony Express or Williams, the cost provisions did place an oppressive
burden on Luna. Accordingly, when determining whether the arbitration agreement
as a whole was so one-sided as to render it substantively unconscionable, the costs
provision weighs heavily toward a finding of substantive unconscionability. See
Pony Express, 921 S.W.2d at 822 (implying that it is necessary to look at the
provisions of an agreement as a whole to determine whether it is substantively
unconscionable).
B.      Limitation of Remedies
          Luna asserts that the arbitration agreement’s prohibition of punitive damages
and reinstatement remedies is substantively unconscionable because those remedies
are allowed under the Texas Labor Code. See Tex. Lab. Code Ann. § 451.002
(Vernon 1996).
          As a threshold matter, we note that Luna’s amended petition sought both
reinstatement and punitive damages, the latter based on allegations of actual malice
on the part of Poly-America. Section 451.002 provides for “reasonable damages
incurred by the employee as a result of the violation.” Id. The Texas Supreme Court
has recognized that the statute allows punitive damages only when the employee can
show that the employer displayed actual malice. Continental Coffee Prods. Co. v.
Cazarez, 937 S.W.2d 444, 454 (Tex. 1996). 
          Provisions prohibiting punitive damages in arbitration agreements are generally
enforceable. Investment Partners, L.P. v. Glamour Shots Licensing, Inc., 298 F.3d
314, 318 n.1 (5th Cir. 2002). In a gender-discrimination case against an employer,
a federal court applying Texas law has upheld an arbitration agreement that
prohibited punitive damages and severely limited the employee’s statutory right to
reinstatement. See Kinnebrew v. Gulf Ins. Co., C.A. No. 3:94-CV-1517-R, 1994 WL
803508, at *1 (N.D. Tex. Nov. 28, 1994) (denying employee’s claim that denial of
punitive damages and allowing reinstatement “only if money damages are insufficient
as a remedy” invalidated the arbitration agreement). However, the court in
Kinnebrew noted that the employee did not cite any case supporting her position that
she should not be forced to arbitrate because the remedies allowed under the
arbitration policy denied her substantive rights to which she would have been entitled 
in a judicial forum. See id. at *2. Here, Luna cites several cases in support of his
contention that the limitation of remedies deprives him of rights that he could assert
in a judicial forum. 
          Luna again claims that Halliburton is determinative as to the provisions
limiting remedies. This contention is based on the same logical fallacy that Luna
employed in arguing that the cost provisions were necessarily unconscionable. In
Halliburton, the Texas Supreme Court held that the agreement in that case was not
substantively unconscionable, in part because all remedies available in court were
also available in arbitration, but the court did not hold that arbitration agreements can
never limit remedies. See id., 80 S.W.3d at 572.



          As shown by Pony Express, Texas law does not require that all statutory
remedies be provided in arbitration proceedings. See id., 921 S.W.2d at 822. Under
the arbitration agreement, Luna would be entitled to reasonable damages as allowed
by the Texas Labor Code; however, the agreements prohibit reinstatement, which is
also available under the Code. See Tex. Lab. Code Ann. § 451.002. In addition,
under the arbitration agreement, Luna would be precluded from seeking punitive
damages based on proof of actual malice, a remedy that is allowed under the Code. 
See id.
          Although preclusion of statutory remedies may not always weigh toward a
finding that the provisions as a whole are substantively unconscionable, their
preclusion does so with regard to the statutory remedies at issue in this case because
Luna’s claim is one brought for alleged retaliation for filing a worker’s compensation
claim as part of the overall Worker’s Compensation Act. See Tex. Lab. Code Ann.
§§ 451.001-.003 (Vernon 1996 & Supp. 2004-2005). The Texas Supreme Court has
held that the legislative policy behind the Act dictates that its provisions be construed
in favor of the injured worker. See Kroger Co. v. Keng, 23 S.W.3d 347, 349 (Tex.
2000). In fact, to discourage employers from opting out of the system, the Legislature
expressly limited the defenses available to an employer opting out of the Act’s
provisions. See id. Such a policy heightens the scrutiny that should be afforded to
arbitration provisions that expressly limit statutory remedies afforded under the Act. 
In particular, the Act expressly confers upon a prevailing plaintiff a right to
“reinstatement in the former position of employment,” and the arbitration agreement
at issue here expressly abrogates such a right. See Tex. Lab. Code Ann. §
451.002(b).
          This is not a case in which the employer is a non-subscriber and the employee
made a voluntary pre-injury election to participate in a non-subscribing employer’s
benefit plan in lieu of exercising common-law remedies. See, e.g., Lawrence v. CDB
Servs., Inc., 44 S.W.3d 544, 545 (Tex. 2001). Rather, this is the kind of agreement
that “requires a prospective employee, as a condition to receipt or retention of
employment, to agree to limit the employer’s liability.” Id. at 550 (quoting Brito v.
Intex Aviation Servs., Inc., 879 F. Supp. 650, 654 (N.D. Tex. 1995)). The latter is
disfavored because it contravenes the worker’s compensation scheme. See id. 
Moreover, it is undisputed in the record before us that Poly-America is a subscriber
under the Worker’s Compensation Act and thus a recipient of the benefits that the Act
affords employers. Having availed itself of the benefits of the Act on the one hand, 
Poly-America seeks to enforce the arbitration agreement’s limits on the employee’s
right of reinstatement on the other hand. Unlike the plan elections offered by non-subscribers in Lawrence, a limitation by a subscribing employer strikes at the core of
the legislative policy concerns addressed by the Act.
          Thus, preclusion of the two substantive statutory remedies here tends to weigh
toward a finding that the agreement’s provisions as a whole are substantively
unconscionable.
C.      Shortening of the Statute of Limitations 
          Luna also asserts that the provision shortening the statute of limitations from
two years to one year is unconscionable. The provision states that “[t]he party
seeking to arbitrate a dispute must submit written notice of claim within the earlier
of one year or the time period prescribed by the statute or common law cause of
action under which the claim is brought.” Poly-America does not dispute that the
applicable statute of limitations for wrongful discharge would be two years under the
Labor Code. See Johnson & Johnson Medical, Inc. v. Sanchez, 924 S.W.2d 925, 927
(Tex. 1996).
          The Texas Supreme Court has allowed the statute of limitations to be modified
in an arbitration agreement involving a claim of wrongful discharge. See EZ Pawn
Corp. v. Mancias, 934 S.W.2d 87, 89 (Tex. 1996) (acknowledging that parties’
arbitration agreement shortened statute of limitations to 180 days). Here, the
shortened limitations provision applies equally to both parties. Moreover, Luna filed
his claim within the one-year limit under the arbitration agreement, and thus the
provision as applied to these facts did not render the agreement unconscionable. 
          Under the circumstances of this case, this provision does not weigh in favor of
a finding that the arbitration agreement as a whole was substantively unconscionable.
D.      Limitations on Discovery
          Luna asserts that the discovery limitations contained in the arbitration
agreement are substantively unconscionable because they benefit only Poly-America. 
Specifically, Luna points to the following provisions as unconscionable: (1) allowing
each side one deposition; (2) disallowing requests for admissions; (3) disallowing
discovery of Poly-America’s financial information; and (4) requiring confidentiality
on all aspects of arbitration. The agreement also allows each side to serve one set of
25 interrogatories and to serve one set of 25 requests for production, inspection of
documents, or tangible things. Both sides are also permitted to designate experts and
to issue subpoenas. 
          Luna concedes that all of the discovery limitations, with the exception of the
provision concerning financial information, apply equally to both Luna and Poly-America. Luna argues that these provisions are still unconscionable because they
were constructed to favor only Poly-America. Luna offered the affidavit of Costea
to show that the provisions regarding depositions, requests for admissions, and
confidentiality work exclusively to Poly-America’s advantage. Specifically, Costea
stated that, in a case such as this, on average, an employee will need to take three to
five depositions, while the employer will need to take only the deposition of the
complaining employee. Nevertheless, because Luna stated in his affidavit that David
Davenport was his supervisor and that Davenport was the representative of Poly-America who harassed him and terminated his employment, the trial court could have
concluded that Luna would not need to take more than the deposition of Davenport.
          Luna cites four cases to support his argument that discovery limitations are
unconscionable, but each of those decisions is distinguishable from this case and
contrary to Texas law. In Ferguson v. Countrywide Credit Industries, Inc., the
arbitration agreement limited the number of subjects that could be included in the
deposition of a corporate representative, but did not similarly limit the subjects
included in employee depositions. See id., 298 F.3d 778, 786 (9th Cir. 2002). The
Ninth Circuit Court of Appeals held that the discovery provisions were not per se
unconscionable, but contributed to the overall pattern of unconscionability
throughout that agreement. Id. at 787. In this case, there is no such limitation of
deposition subjects in favor of Poly-America.
          The arbitration agreement in Hooters of America, Inc. v. Phillips is
distinguishable because that agreement contained two discovery requirements for the
employee that did not apply to the employer, in addition to an arbitrator-selection
process that was biased in favor of the employer. See id., 173 F.3d 933, 938-39 (4th
Cir. 1999). In Geiger v. Ryan’s Family Steak Houses, Inc., the arbitration agreement
allowed one deposition per side as of right, but allowed additional depositions at the
discretion of a panel “stacked against the employee in the first place.” See id., 134 F.
Supp. 2d 985, 996 (S.D. Ind. 2001). Here, there is no allegation that the selection of
arbitrators is one-sided. Similarly, the case that Luna cites for the proposition that the
confidentiality requirement unconscionably impedes discovery is not on point. See
Torrance v. Aames Funding Corp., 242 F. Supp. 2d 862, 875 (D. Or. 2002). In that
case, the court found that the confidentiality agreement was unconscionable because
it involved consumer fraud, which is a public-interest problem. See id. (holding that
confidentiality provision affected so many persons that it would put lender in “vastly
superior legal posture”). 
          We thus hold that the discovery provisions in this case that applied equally to
both parties are not per se substantively unconscionable, especially when Texas law
permits discovery to be eliminated entirely in some arbitration agreements. See Pony
Express, 921 S.W.2d at 822 (asserting that discovery may be limited or eliminated in
some arbitration agreements).
          We also disagree with Luna’s assertion that the provision allowing Poly-America limited access to Luna’s financial information, although completely denying
Luna any access to Poly-America’s financial records, is substantively unconscionable. 
Luna argues that he will be unable to rebut “certain reasons for discharge” without
access to Poly-America’s financial condition. The arbitration agreements state that
“[f]inancial information about either party is not relevant and shall not be
discoverable, with the exception that information about employee’s earnings is
relevant and shall be discoverable if employee is seeking lost wages, back pay, and/or
front pay.” Plainly, the arbitration agreement puts the employer and employee on an
unequal footing. Luna, however, offered no evidence to demonstrate the specific
relevance of Poly-America’s financial condition to the discharge decision. Without
such a showing of relevance, we cannot determine the financial condition’s impact
in the overall agreement. Accordingly, under the circumstances of this case, the
provisions limiting discovery do not weigh toward a finding of overall substantive
unconscionability.
E.      Alterations to Standard of Proof
          Luna asserts that the arbitration agreement unconscionably prohibits the
arbitrator from considering whether Poly-America had a good reason for terminating
Luna. We disagree with Luna’s interpretation of the agreement.
          The provision in question stated that “[t]he arbitrator shall not have the
authority to alter the parties’ at-will relationship or to apply a ‘just cause’ or ‘good
cause’ standard to claims relating to Employee’s claims concerning his employment
or separation therefrom.” The general rule in Texas is that “employment may be
terminated by the employer or the employee at will, for good cause, bad cause, or no
cause at all.” Montgomery County Hosp. Dist. v. Brown, 965 S.W.2d 501, 502 (Tex.
1998). Luna’s employment was at will. The provision in the arbitration agreement
simply prohibits the arbitrator from applying a “good cause” standard instead of
Texas’s traditional “at-will” standard to employment cases; the clause does not
prohibit the arbitrator from inquiring as to the reason for termination. Accordingly,
this provision does not weigh in favor of a finding of overall substantive
unconscionability.
F.      Scope of Arbitration Agreement
          Luna argues that the provision that equally binds both parties to arbitrate any
claims that they might have against each other in the future is substantively
unconscionable because he would have to arbitrate even those claims that may arise
in the future and that do not relate to his employment. 
          Luna contends that he could have claims that do not relate to his employment
in the future, such as a slander or a personal injury claim, and that it is
unconscionable that these claims be subject to the arbitration agreement. However,
the provision applies equally to Poly-America. If Luna were to trespass on Poly-America’s property, that claim against Luna would be subject to the arbitration
agreement even though it has nothing to do with Luna’s employment. Because both
parties are equally bound to arbitrate any future claims against each other, the
provision is not so one-sided that it is substantively unconscionable. See FirstMerit
Bank, 52 S.W.3d at 757. Accordingly, this provision does not weigh toward an
overall finding of substantive unconscionability.
G.      Unconscionability of Agreement as a Whole
          Luna asserts that, even if none of the provisions in the agreement is
unconscionable by itself, the agreement as a whole is so unfair as to be
unconscionable. 
          Pony Express clearly indicates that it is appropriate to determine whether an
arbitration agreement is unconscionable as a whole, even if the individual provisions
considered in isolation are not substantively unconscionable. See id., 921 S.W.2d at
822 (holding that trial court abused its discretion by determining unconscionability
without sufficient facts before trial court to determine if agreement was
unconscionable as a whole). Although we believe that Halliburton did not set out
specific requirements that must be met in every arbitration agreement, Halliburton
does provide guidance as to what terms are acceptable with regard to arbitration costs,
discovery, and remedy limitations. See id., 80 S.W.3d at 572. Halliburton upholds
an agreement that requires the employee to pay only a $50 filing fee, allows $2,500
for the employee to consult an attorney, allows the same discovery afforded under the
Federal Rules of Civil Procedure, and allows all remedies that could be pursued in
court. See id. 
          Although it is not necessary for Poly-America’s arbitration provisions to be
equivalent to the provisions approved of in Halliburton, Luna has shown with
unrebutted evidence that two of the provisions in Poly-America’s arbitration
agreement create a much heavier burden for him than those approved in Halliburton. 
The provisions pertaining to arbitration costs and remedy limitations are particularly
burdensome when considering their combined effect. Luna is required to pay
arbitrator’s expenses equal to his highest month’s gross compensation for the 12
months prior to issuance of the arbitrator’s award. Luna showed that, given the
average cost of arbitrations in Harris County, he will very likely incur costs up to the
maximum. In addition to these costs, Luna will be precluded from reinstatement to
his former job and from collection of punitive damages, to both of which he may have
been entitled under the Texas Labor Code. See Cazarez, 937 S.W.2d at 454
(asserting that employee may be entitled to punitive damages when he can prove
actual malice); see also Tex. Lab. Code Ann. § 451.002(b).
          Luna also presented some evidence that the agreement gears its discovery
provisions to favor Poly-America, in particular with regard to producing financial
information. Under these facts, however, Luna has not demonstrated that the
discovery limitations alone render the agreement unconscionable. As for the other
provisions, we have found that, under the circumstances of this case, they do not
weigh in favor of a finding of substantive unconscionability.
          It is not the number of provisions weighing toward an overall finding of
substantive unconscionability that matters as much as the cumulative one-sidedness
of the burden that those provisions place on a party.
           The United States Supreme Court has noted that, as long as the prospective
litigant can effectively vindicate his statutory cause of action in the arbitral forum, the
statute continues to serve its remedial and deterrent function. See Gilmer, 500 U.S.
at 28, 111 S. Ct. at 1653 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 637, 105 S. Ct. 3346, 3359 (1985)). Here, the high cost of
arbitration, combined with the limitation of damages and reinstatement in the
agreement, essentially deprive Luna of the opportunity to vindicate his claim
effectively in the arbitral forum under the Texas Labor Code. Such deprivation is not
consistent with the strong legislative policy behind the Worker’s Compensation Act. 
See Kroger, 23 S.W.3d at 349-50. Although Luna has not shown that any of the other
provisions is so one-sided in Poly-America’s favor as to be substantively
unconscionable, the one-sidedness of the cost and remedy provisions tend to render
the agreement as a whole unconscionable under the facts and circumstances of this
case.
          Poly-America argues that Ferguson, the Ninth Circuit Court of Appeals case
on which Luna relies for his contention that the agreement should be considered as
a whole with regard to unconscionability, is not applicable to this case because it
applies a different standard for unconscionability. See id., 298 F.3d at 784. However,
Poly-America fails to acknowledge, as Pony Express plainly recognizes, that Texas
courts must consider the arbitration agreement as a whole. See id., 921 S.W.2d at
822. As the Pony Express court also indicated, the fact that individual provisions
may not be unconscionable in certain circumstances does not mean that a particular
agreement cannot be unconscionable when considered as a whole. See id.
          Accordingly, we hold that the arbitration costs imposed on Luna, who provided
evidence of the costs of arbitration and of his inability to pay, in addition to the
limitations on Luna’s opportunity to be reinstated and to recover punitive damages,
render the arbitration agreement, when considered as a whole, so one-sided in Poly-America’s favor and so oppressive to Luna as to be substantively unconscionable,
given the strong legislative policy behind the Worker’s Compensation Act.
Severability
          Poly-America argues that, even if some of the arbitration provisions are found
to be unconscionable, they can be severed from the arbitration agreement, pursuant
to the severability clause contained in the agreement, so that the parties can still be
compelled to arbitrate. Poly-America relies on two Fifth Circuit Court of Appeals
cases for the proposition that unconscionable provisions can be severed from an
otherwise acceptable arbitration agreement. However, both of those cases are
distinguishable from this case. In Carter v. Countrywide Credit Industries, Inc. and
Jones v. Fujitsu Network Communications, Inc., the court invalidated only the 
provision in the agreements that required fee-splitting and ordered the parties to
arbitrate with the employers to pay all arbitration costs. See Carter, 189 F. Supp. 2d
606, 620 (N.D. Tex. 2002); Jones v. Fujitsu Network Communications, Inc., 81 F.
Supp. 2d 688, 693 (N.D. Tex. 1999).
          In this case, however, there is more than one provision that renders the
agreement unconscionable; both the arbitration costs and the remedy limitations
imposed on Luna cause the agreement to be unconscionable as a whole. When a
portion of an agreement to be severed is integral to the entire agreement, a
severability clause cannot save the agreement. Cf. John R. Ray & Sons, Inc. v.
Stroman, 923 S.W.2d 80, 87 (Tex. App.—Houston [14th Dist.] 1996, writ denied)
(holding that because “covenant not to compete” was integral to agreement, it could
not be severed from agreement). Because the purpose of arbitration is to afford the
parties an alternative forum in which to vindicate their claims, and because the cost
provisions and remedy limitations together deprive Luna of his opportunity to
vindicate his claim in the arbitral forum, we hold that those provisions are integral to
the purpose of the agreement and cannot be severed. 
          Accordingly, we hold that the trial court abused its discretion in granting Poly-America’s motion to compel arbitration. Because we have held that the arbitration
agreement is substantively unconscionable, it is unnecessary to address Luna’s
contention that the agreement should fail for lack of consideration.

Conclusion
          We conditionally grant Luna’s petition for writ of mandamus. We are
confident that the trial court will comply with our holding. Accordingly, writ will
issue only if the trial court does not withdraw its order compelling arbitration.

 
 
Tim Taft
Justice
Panel consists of Justices Taft, Keyes, and Bland.